Filed 3/27/13  Kim v. An CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JAE HEE KIM et al., | B236941 c/w |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC387638) |
| v. | |
| BENJAMIN AN et al., | |
| Defendants and Appellants. | |
| RANI LEE, | B240154 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC387638) |
| v. | |
| BENJAMIN AN et al., | |
| Defendants and Respondents. | |

APPEALS from a judgment and order of the Superior Court of Los Angeles County.  Abraham Kahn, Judge.  Reversed and remanded with directions.

SoCal Law Group and James Mortensen for Defendants and Appellants and for Defendants and Respondents.

Herzlich & Blum and Allan Herzlich for Plaintiff and Appellant and for Plaintiffs and Respondents.

In the action underlying these consolidated appeals, Jae Hee Kim and Rani Lee sued Jeannie Yoon and several other parties, including Benjamin An and JC 2020, Inc. (JC 2020), alleging that Yoon improperly transferred her assets to the other defendants to prevent Kim and Lee from executing on their default money judgments against Yoon.[1] During the trial, the defendants attacked Kim's and Lee's standing, contending the default judgments belonged to their bankruptcy estates. After the trial court entered a judgment in Kim's and Lee's favor directing the transfer of five parcels of real property to Yoon, An and JC 2020 appealed from the judgment (B236941). Soon afterward, Kim's default judgment against Yoon was vacated on the ground that his bankruptcy proceeding nullified his standing to obtain the judgment.

Later, Maven Asset Management (Maven), a nonparticipant in the underlying action, obtained an assignment of an unpaid money judgment against Lee and filed a lien against the judgment in the underlying action. When Lee sought an order directing the execution of the grant deeds required under the judgment, the trial court in the underlying action denied the request on basis of Maven's judgment creditor lien. Lee appealed from the denial of her request (B240154).

In the first appeal (B236941), An and JC 2020 challenge the judgment on several grounds, including that Kim and Lee lack standing to assert their claims, that Lee is estopped from maintaining her claims, that there is insufficient evidence to support the judgment, and that there was instructional error at trial. We conclude that Kim has no standing to pursue the instant litigation because the

---

[1] Yoon is identified as "Annie Yun" and "Jeannie Chong" in the record. For simplicity, we adopt the name the parties use in their briefs, that is, "Jeannie Yoon."

2

vacation of his default judgment is now final and nonappealable. We further conclude that Lee lacks standing to pursue the instant litigation because her default judgment belongs to her bankruptcy estate, but otherwise reject appellants' remaining challenges to the judgment in her favor. With respect to Kim, we reverse the judgment and remand with directions to the trial court to dismiss Kim's action. With respect to Lee, we reverse the judgment, and remand with directions to the trial court to afford Lee a reasonable opportunity to secure either (a) the bankruptcy trustee's participation as real party in interest or (b) the trustee's abandonment of the default judgment (and the right to enforce it).

In the second appeal (B240154), we conclude that the trial court properly barred Lee from enforcing the underlying judgment due to Maven's lien.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

In March 1998, Kim initiated an action for breach of contract and fraud against Yoon, alleging that Yoon agreed to sell Kim's residence but never paid him the proceeds from the sale. Later, in August 1998, Kim filed a petition for chapter 7 bankruptcy protection (11 U.S.C. § 701 et seq.), but did not disclose his pending action against Yoon on his schedule of assets. In November 1998, after Kim obtained a default judgment for $51,844.81 in his action against Yoon, Kim's bankruptcy proceeding was closed

In May 1999, Lee sued Yoon for breach of contract and money had and received, alleging that Yoon arranged the sale of a house in which Lee acted as the seller, but never paid Lee the proceeds to which she was entitled. In October 1999, Lee obtained a default judgment for $369,149 against Yoon. Later, in early 2003, Lee filed for Chapter 7 bankruptcy protection without listing the unpaid judgment against Yoon on her schedule of assets. Lee's bankruptcy proceeding was closed in July 2003.

3

In 2008, after renewing the default judgments, Lee and Kim initiated the underlying action against Yoon, An, JC 2020, and several other parties.[2] Their first amended complaint (FAC), filed June 27, 2008, alleged that Yoon conspired with An, JC 2020, and the other defendants to buy five properties with Yoon's funds and hold them in a manner intended to prevent Lee and Kim from collecting on their default judgments against Yoon.[3] The complaint asserted claims under the Uniform Fraudulent Transfer Act (Civ. Code, § 3439 et seq.) (UFTA) and claims for express and resulting trust.

In February 2009, prior to the trial in the underlying action, Yoon filed a petition for Chapter 7 bankruptcy protection. In the bankruptcy proceedings, Lee initiated an adversary action against Yoon. During the adversary action, the bankruptcy court granted what it denominated summary judgment in Yoon's favor regarding whether she had concealed interests in the five properties identified in the FAC. Furthermore, the bankruptcy court granted summary judgment in Lee's favor regarding whether Yoon's schedule of assets contained other material misstatements or omissions (11 U.S.C. § 727(a)(3), (a)(4)(A)), and thus denied Yoon a discharge.

In June 2011, following the dismissal of Yoon's bankruptcy proceeding, a combined jury and bench trial began in the underlying action. During the trial, the defendants asserted a motion for nonsuit, judgment, or directed verdict (Code Civ. Proc., §§ 531c, 630, 631.8), contending that Lee and Kim lacked standing to

[2] The other defendants are Brian Chong, Chung K. Kim, Jae E. Lee, Gene M. Jones, Michael D. Seltzer, Stefanie R. Seltzer, Oakland Group, L.L.C., Westside Housing Solutions, L.L.C., Joy 2000 Construction, Xenon Investment Corp., and 2000, Inc. Like Yoon, none of these parties has appeared in this appeal.

[3] Although the FAC also alleged that the conspiracy involved a sixth property, the trial on Lee's and Kim's claims did not encompass that property.

4

pursue the action because their default judgments belonged to their bankruptcy estates, and that the summary judgment in Yoon's favor in her bankruptcy proceeding collaterally stopped Lee from asserting her claims. The trial court denied the motion.

At trial, Lee and Kim offered evidence that although An and JC 2020 held the legal title to the five properties, Yoon possessed the beneficial interest in them. Following the close of presentation of evidence, Lee and Kim elected to submit only their "express or resulting trust theory" to the jury. The jury returned special verdicts that An and JC 2020 held the five properties in express or resulting trusts for Yoon's benefit.

The trial court's statement of decision adopted the special verdicts and concluded that Kim and Lee were entitled to a judgment in their favor. An and JC 2020 objected to the statement of decision and proposed judgment on several grounds, including that Lee and Kim lacked standing to pursue the action and Lee was collaterally estopped from asserting her claims. On September 20, 2011, over these objections, the trial court entered a judgment directing An and JC 2020 to execute grant deeds conveying the five properties to Yoon. The judgment further provided that if An and JC 2020 failed to do so, the clerk of the court was authorized to execute the grant deeds. On October 27, 2011, An and JC 2020 noticed an appeal from the judgment (B236941).

On December 8, 2011, the trial court in Kim's 1998 action against Yoon granted a motion by Yoon to vacate the default judgment and the renewal of the default judgment.[4] In ruling, the court stated that the judgment and renewal "[had] been obtained by a fraud on the court and that Kim had no standing to prosecute

---

[4] At An and JC 2020's request, we take judicial notice of the order granting Yoon's motion.

5

[the 1998 action] after filing his chapter 7 bankruptcy." The court further stated that its order was "without prejudice to any action the bankruptcy court or trustee may take in bankruptcy court on the claims in [Kim's] complaint."

In late December 2011, Lee filed a motion to enforce the judgment in the underlying action, seeking an order directing the clerk of the court to execute the grant deeds transferring the five properties to Yoon.[5] Shortly afterward, Maven obtained an assignment of an unpaid $91,288.36 judgment against Lee stemming from an unrelated lawsuit and filed a lien against the judgment in the underlying action (Code Civ. Proc., § 708.410). The trial court denied Lee's motion, concluding that Maven's lien as judgment creditor barred the enforcement of the judgment in Lee's favor in the underlying action. Lee noticed an appeal from the denial of her request (B240154).

## DISCUSSION

### I

In the appeal from the underlying judgment (B236941), An and JC 2020 contend (1) that Kim and Lee have no standing to pursue the action, (2) that Kim and Lee are judicially estopped from asserting their claims, (3) that Lee is collaterally estopped from asserting her claims, (4) that there was insufficient evidence to support the judgment, and (5) that the jury instructions and specific verdict form were defective. For the reasons discussed below, we conclude that

---

[5]     With respect to one property, Lee sought the execution of two grant deeds in order to resolve a potential issue regarding the legal title to the property. Lee asserted that after the judgment was entered in the underlying action, An tried to transfer his interest in the property to JC 2020. Because this transfer may have modified the property's legal titleholder, as described in the judgment, Lee requested that the clerk of the court execute two grant deeds reflecting the pre- and post-transfer titleholders.

6

Kim and Lee lack standing to assert their claims, but otherwise reject An and JC 2020's contentions.[6]

A. *Entitlement to Assert Claims*

An and JC 2020 assert related challenges to Lee's and Kim's entitlement to maintain the underlying action. They contend Lee and Kim lack standing because their default judgments belong to the trustees of their bankruptcy estates; in addition, they attack Kim's standing on the ground that his default judgment has been vacated due to "fraud on the court."[7] An and JC 2020 also contend that under the doctrine of judicial estoppel, Lee and Kim may not pursue the underlying litigation because they failed to disclose their claims against Yoon during their respective bankruptcy proceedings.

---

[6] In addition, An and JC 2020's opening brief asserts that the trial court incorrectly applied the pertinent statute of limitations to Kim's and Lee's claims, but contains no argument regarding this purported error. An and JC 2020 have thus forfeited the contention. (*Horowitz v. Noble* (1978) 79 Cal.App.3d 120, 138-139.)

We also note that An and JC 2020's opening brief contends that the trial court's statement of decision failed to make express findings on several factual issues. As the appropriate remedy for such errors is to reverse the judgment with directions to the trial court to prepare an adequate statement of decision (see *Gordon v. Wolfe* (1986) 179 Cal.App.3d 162, 168), our conclusion that the judgment must be reversed due to lack of standing moots the contention regarding the statement of decision.

[7] Although An and JC 2020's opening brief did not challenge Kim's standing on the basis of the vacation of his default judgment, we requested and obtained supplemental briefing regarding whether the vacation of the default judgment rendered the judgment in the underlying action unenforceable by Kim.

7

1. *Standing*

We begin by examining Kim's and Lee's standing to maintain the underlying action. As explained below, although we agree that neither Kim nor Lee has standing to pursue the underlying action, the deficiencies in each party's standing are distinct, and thus mandate different outcomes in this appeal. Lee lacks standing because her default judgment belongs to her bankruptcy estate. However, this defect is not necessarily fatal to the underlying judgment in Lee's favor, as it could be cured if she were to secure the participation of the bankruptcy trustee as real party in interest or obtain from the trustee the right to enforce her default judgment. In contrast, Kim lacks standing due to the vacation of his default judgment. Because that ruling is final and nonappealable, Kim's action against An and JC 2020 must be dismissed.

a. *Governing Principles*

"Standing is a jurisdictional issue that . . . must be established in some appropriate manner." (*Waste Management of Alameda County, Inc. v. County of Alameda* (2000) 79 Cal.App.4th 1223, 1232, disapproved on another ground in *Save the Plastic Bag Coalition v. City of Manhattan Beach* (20011) 52 Cal.4th 155, 169-170.) Only real parties in interest have standing to prosecute actions. (*Iglesia Evangelica Latina, Inc. v. Southern Pacific Latin American Dist. of the Assemblies of God* (2009) 173 Cal.App.4th 420, 445.) "'Generally, "the person possessing the right sued upon by reason of the substantive law is the real party in interest." [Citations.]' [Citation.] To have standing, a party must be beneficially interested in the controversy, and have 'some special interest to be served or some particular right to be preserved or protected.' [Citation.]" (*Ibid.*) Lack of standing is a jurisdictional defect that mandates dismissal of an action, and thus can be raised

8

for the first time at any stage in the action. (*Cummings v. Stanley* (2009) 177 Cal.App.4th 493, 501.)

In view of these principles, Kim's and Lee's standing hinges on the rights underlying their claims against An and JC 2020. As we elaborate below (see pt. I.B.2., *post*), although the FAC contained claims for fraudulent transfer under the UFTA (Civ. Code, §§ 3439.04, 3439.05) and claims predicated on express and resulting trusts, Kim and Lee abandoned their UFTA claims at trial. Accordingly, their standing relies on their entitlement to relief on the theory that An and JC 2020 hold the five properties in express or resulting trusts for Yoon.[8]

Generally, that theory rests on the principle that "a judgment lien attaches to all interest in real property, including equitable interests." (*Fidelity National*, *supra*, 179 Cal.App.4th at p. 849, italics omitted.) Because a judgment debtor who is the beneficiary of an express or resulting trust in real property holds the "equitable interest" in the real property, judgment creditors may assert a claim to establish the existence of the express or resulting trust, for purposes of attaching their judgment lien to the real property. (*Id*. at p. 850.) Here, in renewing the default judgments, Kim and Lee filed abstracts of judgment, which imposed

---

[8] Express and resulting trusts differ in the manner of their creation. (*Fidelity National Title Ins. Co. v. Schroeder* (2009) 179 Cal.App.4th 834, 847-848 (*Fidelity National*); 13 Witkin, Summary of Cal. Law (2005) Trusts, § 311, p. 885.) "'A resulting trust arises by operation of law from a transfer of property under circumstances showing that the transferee was not intended to take the beneficial interest. [Citations.] Such a resulting trust carries out and enforces the inferred intent of the parties. [Citations.]' [Citation.] . . . It differs from an express trust in that it arises by operation of law, from the particular facts and circumstances, and thus it is not essential to prove an express or written agreement to enforce such a trust. [Citation.]" (*Fidelity National*, *supra*, 179 Cal.App.4th at pp. 847-848.)

9

judgment liens on Yoon's equitable interests in any real property.[9] Kim's and Lee's claims for express and resulting trusts alleged that Yoon was the "beneficial owner" of the five properties, and also sought the execution of grant deeds to transform Yoon's equitable interests into interests secured by a legal title in her own name. For this reason, Kim's and Lee's standing to assert the claims is ultimately founded on their status as judgment creditors of Yoon, that is, on their right to enforce their default judgments against Yoon.[10]

### b. *Analysis*

Kim and Lee lack standing as judgment creditors for distinct but related reasons arising from their failure to disclose their claims against Yoon during their Chapter 7 bankruptcy proceedings.

### i. *Chapter 7 Bankruptcy Proceedings*

Upon the filing of a Chapter 7 petition, all of the petitioning debtor's legal or equitable interests in property become the property of the bankruptcy estate, including causes of action. (*M & M Foods, Inc. v. Pacific American Fish Co., Inc.* (2011) 196 Cal.App.4th 554, 561-562 (*M & M Foods*).) "'In the context of bankruptcy proceedings, it is well understood that "a trustee, as the representative

---

[9] Subdivision (a) of Code of Civil Procedure section 697.310 provides that "a judgment lien on real property is created . . . by recording an abstract of a money judgment with the county recorder."

[10] We recognize that a judgment creditor cannot ordinarily reach the judgment debtor's interests in an express trust without using a special enforcement procedure specified in subdivision (b) of Code of Civil Procedure section 70. (*Fidelity National*, *supra*, 179 Cal.App.4th at p. 850.) However, as An and JC 2020 do not argue that Kim and Lee failed to comply with this requirement, they have forfeited any such contention of error.

of the bankruptcy estate, is the real party in interest, and is the only party with standing to prosecute causes of action belonging to the estate once the bankruptcy petition has been filed." [Citation.] The commencement of Chapter 7 bankruptcy extinguishes a debtor's legal rights and interests in any pending litigation, and transfers those rights to the trustee, acting on behalf of the bankruptcy estate. [Citations.] Thus, "[g]enerally speaking, a pre-petition cause of action is the property of the Chapter 7 bankruptcy estate, and only the trustee in bankruptcy has standing to pursue it." [Citations.]' [Citations.]" (*Ibid*., italics omitted, quoting *Moses v. Howard University Hospital* (D.C. Cir. 2010) 606 F.3d 789, 795.)

Furthermore, under the bankruptcy statutes, the debtor's failure to disclose any item of property, including a cause of action, does not exclude it from the bankruptcy estate. (*Cloud v. Northrop Grumman Corp.* (1998) 67 Cal.App.4th 995, 1003 (*Cloud*).) The undisclosed property is incorporated into the bankruptcy estate, and remains an unadministered asset of the estate following the close of the bankruptcy proceeding until the trustee abandons it. (*M & M Foods*, *supra*, 196 Cal.App.4th at p. 563; see *Cloud*, *supra*, 67 Cal.App.4th at pp. 1003-1004, 1020-1021.) In such cases, the property may be abandoned by two methods: "(1) after notice and hearing, the trustee may unilaterally abandon property that is 'burdensome . . . or . . . of inconsequential value' (11 U.S.C. § 554(a)) [or] (2) after notice and hearing, the court may order the trustee to abandon such property (11 U.S.C. § 554(b))." (*Cloud*, *supra*, at p. 1003.)

### ii. *Lee.*

Under these principles, Lee lacks standing to pursue the underlying action. Because Lee did not disclose her unpaid default judgment against Yoon during her bankruptcy proceeding, which closed in 2003, the judgment is an element of the estate, and is thus enforceable only by the trustee. (See *M & M Foods*, *supra*, 196

Cal.App.4th at pp. 557-558, 563-564 [only bankruptcy trustee had standing to engage in arbitration directed at recovering accounts receivable belonging to bankruptcy estate]; *In re MortgageAmerica Corp.* (5th Cir. 1983) 714 F.2d 1266, 1275 [only bankruptcy trustee had standing to pursue fraudulent transfer claim directed at recovering assets belonging to bankruptcy estate].)  For this reason, the judgment in Lee's favor must be reversed.[11]  (*Samter v. Klopstock Realty Co.* (1939) 31 Cal.App.2d 532, 536-537.)

---

[11]     Lee contends the trial court correctly found that she has standing to pursue the underlying action.  We reject this contention.  Generally, the trial court's ruling on standing is reviewed for the existence of substantial evidence.  (*Burrtec Waste Industries. Inc. v. City of Colton* (2002) 97 Cal.App.4th 1133, 1137.)  However, our application of this test is complicated by a special circumstance, namely, An's and JC 2020's failure to provided a full reporter's transcript of the trial.  As explained below (see pt. I.B.3., *post*), the limited record they have submitted triggers a presumption that the trial court's factual findings are correct.  Nonetheless, that presumption is subject to an exception that encompasses any factual finding regarding Lee's standing:  when error appears on the face of a limited record, an appellate court will not presume that the error was corrected in proceedings outside the record.  (*Palpar, Inc. v. Thayer* (1947) 82 Cal.App.2d 578, 582-583; Cal. Rules of Court, rule 8.163.)

Here, the limited record establishes on its face that Lee never disclosed her default judgment during her bankruptcy proceeding.  According to the partial reporter's transcript of the trial, Lee testified that she did not list the default judgment on her schedule of assets or bring it to the bankruptcy trustee's attention.  Furthermore, the record shows that although An and JC 2020 repeatedly argued before the trial court that Lee did not divulge her default judgment during the bankruptcy, Lee never attempted to identify evidence to the contrary; rather, she argued that any such omission was unintentional and harmless to her creditors.  Accordingly, Lee's contention regarding her standing fails for want of substantial evidence.

For similar reasons, we reject Lee's related contention that she must be afforded a jury trial before the judgment in her favor is reversed due to her lack of standing.  Because undisputed facts establish that she does not have standing to
*(Fn. continued on next page.)*

12

Nonetheless, as explained in *Cloud*, the defect in Lee's standing is not necessarily fatal to her claims in the underlying action. There, an employee filed for Chapter 7 bankruptcy protection after her employer fired her. (*Cloud*, *supra*, 67 Cal.App.4th at pp. 998-999.) While the bankruptcy proceeding was pending, the employee sued her employer for wrongful termination and sexual harassment, but never disclosed that lawsuit in the bankruptcy proceeding. (*Ibid*.) After the bankruptcy proceeding closed, the employer sought judgment on the pleadings in the wrongful termination action on the ground that only the bankruptcy trustee had standing to assert the employee's claims. (*Id*. at p. 1000.) In response, the employee requested leave to (1) substitute the bankruptcy trustee as real party in interest or (2) obtain the trustee's abandonment of the claims, arguing that she had not intended to conceal the lawsuit from the trustee. (*Id*. at pp. 1000, 1008.) After judgment on the pleadings was granted, the appellate court reversed, concluding that the employee was entitled to an opportunity to amend her complaint to cure the defect in standing. (*Id*. at pp. 1003-1005, 1011, 1021.)

We recognize that the situation before us differs from *Cloud*, as Lee obtained a judgment in her favor, which must be reversed due to her lack of standing. However, when a judgment is reversed because the plaintiff has no standing, the plaintiff may seek to cure this defect on remand. (See *Klopstock v. Superior Court* (1941) 17 Cal.2d. 13, 16, 22.) Before the trial court and on appeal, Lee has requested leave to cure any defect in standing based on the fact that her default judgment belongs to the bankruptcy estate. Furthermore, at trial, Lee testified that she was not represented by an attorney during the bankruptcy proceeding, and failed to disclose the default judgment only because she did not

maintain the underlying action, no jury findings are required. (See *People v. Superior Court (Plascencia)* (2002) 103 Cal.App.4th 409, 424.)

13

know that she was required to list it among her assets. Accordingly, under *Cloud*, we may properly direct the trial court upon remand to afford Lee leave to amend her complaint and a reasonable opportunity to secure the bankruptcy trustee's participation in, or abandonment of, Lee's claims based on her default judgment.

### iii. *Kim*

We reach a different conclusion regarding Kim. Although he lacks standing for reasons similar to those discussed above, his claims in the underlying action are also subject to an incurable defect. As noted above, the trial court in Kim's 1998 action against Yoon subsequently vacated both his default judgment against Yoon and the renewal of that judgment. Because those rulings are now final and beyond appeal, they nullify the foundation of Kim's claims in the underlying action, namely, his default judgment against Yoon and the judgment lien predicated on it.

As our Supreme Court has explained, "[a] lien . . . cannot exist apart from the judgment upon which it is based. Thus, in the ordinary course of events when the judgment is vacated by court order the lien will also cease to exist, because the effect of a vacating order is to eliminate the judgment. [Citation.] Once [the judgment is] vacated, the status of the parties that existed prior to the judgment is restored and the situation then prevailing is the same as though the order or judgment had never been made. [Citation.]" (*Bulmash v. Davis* (1979) 24 Cal.3d 691, 697.) For this reason, neither Kim nor his bankruptcy trustee may pursue the claims asserted in the FAC as Yoon's judgment creditors.[12] Accordingly, the

---

[12] In so concluding, we do not suggest that the bankruptcy trustee lacks standing to pursue the claims asserted by Kim in his 1998 action against Yoon, which underlie his default judgment against her.

14

judgment in Kim's favor must be reversed and his action against An and JC 2020 must be dismissed.

### 2. *Judicial Estoppel*

In view of our conclusion that Kim's action must be dismissed, we limit our remaining discussion to the contentions related to Lee. In addition to attacking Lee's standing, An and JC 2020 contend that under the equitable doctrine of judicial estoppel, Lee's failure to disclose her default judgment during her bankruptcy proceeding bars the litigation of Lee's claims in the underlying action.

Generally, judicial estoppel is intended to protect the judicial process, promote fairness in litigation, and shield parties from improper strategies adopted by opponents. (*Gottlieb v. Kest* (2006) 141 Cal.App.4th 110, 131-132.) The doctrine precludes a party from asserting a position in an action that is inconsistent with a prior position that the party advocated with success. (*Id.* at pp. 130-131.) "'The doctrine [most appropriately] applies when "(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake."'" (*Id.* at p. 131, quoting, *Aguilar v. Lerner* (2004) 32 Cal.4th 974, 986-987.) However, "[j]udicial estoppel is an extraordinary remedy that should be applied with caution." (*Kelsey v. Waste Management of Alameda* (1999) 76 Cal.App.4th 590, 598 (*Kelsey*).)

The requirement for standing must be distinguished from the doctrine of judicial estoppel. Under the latter, a debtor who does not disclose legal claims during a bankruptcy proceeding may be barred from asserting those claims in a lawsuit after the debtor receives a discharge and the bankruptcy is closed. (*Cloud*,

15

*supra*, 67 Cal.App.4th at p. 1020.) However, a debtor who fails to disclose a legal claim during the bankruptcy proceeding may have standing to assert the claim, yet be judicially estopped from litigating it. (See *Kelsey, supra,* 76 Cal.App.4th at pp. 594-600 [the fact that Chapter 13 bankruptcy debtor had standing to pursue claim not divulged during bankruptcy proceeding did not resolve whether his action was subject to judicial estoppel].)

On appeal, An and JC 2020 contend that even were Lee to acquire standing to pursue her claim, she would be judicially estopped from doing so by her failure to list her default judgment against Yoon in her bankruptcy proceedings. We disagree. We find guidance on this issue from *Cloud,* which -- as explained above (see pt.I.A.1.b.i., *ante*) -- concerned an employee who failed to disclose her claims against her employer during Chapter 7 bankruptcy proceedings, and attempted to litigate the claims. (*Cloud*, *supra*, 67 Cal.App.4th at pp. 998-999.) There, the trial court's grant of judgment on the pleadings in the employer's favor relied not only on the employee's lack of standing, but also on judicial estoppel. (*Id*. at pp. 1000.)

In holding that the employee should be permitted to rectify her deficient standing, the appellate court determined that judicial estoppel did not preclude litigation of her claims. (*Cloud*, *supra*, 67 Cal.App.4th at pp. 1011-1021.) Aside from finding insufficient evidence that the employee acted in bad faith in failing to divulge her claims, the court explained that under the pertinent circumstances, judicial estoppel is rarely applicable in view of the doctrine's underlying goals, that is, the prevention of unfair litigation tactics and the protection of the judicial process. (*Id*. at pp. 1018-1020.) The court observed that if the bankruptcy trustee were to participate as real party in interest or abandon the claims, no unfair advantage would accrue to the employee through her prior nondisclosure of the claims. (*Id*. at p. 1021.) Furthermore, "[o]nce an appropriate application is made to the bankruptcy court, the bankruptcy court can take appropriate action to

16

promote bankruptcy goals and protect the bankruptcy court's process." (*Ibid*., italics omitted.) In addition, the application of judicial estoppel would generally frustrate the objectives of bankruptcy law by "penaliz[ing] both the debtor and the creditors, while bestowing a windfall upon the third party noncreditor defendant." (*Id*. at p. 1020.)

In an apparent challenge to *Cloud*, An and JC 2020 contend that Lee's trial testimony mandates the application of judicial estoppel to her claims. Because the record shows that for purposes of the doctrine, Lee has taken two inconsistent "positions" with respect to her default judgment, An and JC 2020 focus on the doctrine's requirement that the judgment's nondisclosure was not due to ignorance, fraud, or mistake. On this matter, Lee testified that she was aware of her default judgment, but did not know that she was required to list it among her assets.

An and JC 2020 maintain -- contrary to the appellate court in *Cloud* -- that the "absence of ignorance, fraud, or mistake" requirement is necessarily met in Chapter 7 bankruptcy proceedings when the debtor is aware of his or her claims, but fails to list them as an asset. In so arguing, An and JC 2020 rely on decisions by the Ninth Circuit, which has held that there was no "ignorance, fraud, or mistake" if the Chapter 7 debtor had sufficient knowledge of the nondisclosed claims, regardless of whether the debtor acted in bad faith or was aware of the legal duty to list the claims as assets. (*Hamilton v. State Farm Fire & Cas. Co.* (9th Cir. 2001) 270 F.3d 778, 785-786; see also *Rose v. Beverly Health & Rehabilitation Services, Inc.* (9th Cir. 2008) 295 Fed.Appx. 142, 144; *Elston v. Westport Ins. Co.* (9th Cir. 2007) 253 Fed.Appx. 697, 699.) Relying on this authority, An and JC 2020 contend that Lee's testimony compels the application of the judicial estoppel doctrine.

We recognize that after the decision in *Cloud*, a division of opinion has arisen among the federal courts regarding the application of the "absence of

ignorance, fraud, or mistake" requirement in the context of bankruptcy proceedings. In *Cloud*, the appellate court relied primarily on *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.* (3d Cir. 1996) 81 F.3d 355, 362-363, in which the Third Circuit stated that the requirement is satisfied only when the debtor's nondisclosure of claims was due to "intentional wrongdoing." However, since *Cloud*, the Ninth Circuit has adopted the standard described above; in addition, other circuits have elaborated a standard under which the requirement is satisfied when the debtor had knowledge of the undisclosed claims and a motive to conceal them. (*Burnes v. Pemco Aeroplex, Inc.* (11th Cir. 2002) 291 F.3d 1282, 1287 [discussing cases].)

It is unnecessary for us to examine this division of opinion because the decision to apply judicial estoppel is consigned to the trial court's discretion. As our Supreme Court has explained, because judicial estoppel is an equitable doctrine, "its application, even where all necessary elements are present, is discretionary." (*MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412, 422.) Here, the statement of decision and judgment, while containing no express finding that Lee's nondisclosure was due to ignorance or mistake, expressly rejected the application of judicial estoppel.

We see no basis to reverse the trial court's discretionary ruling.[13] The issue we confront is whether judicial estoppel would bar the litigation of Lee's claims by

---

[13]    As we review the trial court's ruling, not its reasoning (*J.B. Aguerre, Inc. v. American Guarantee & Liability Ins. Co.* (1997) 59 Cal.App.4th 6, 15), we will affirm the trial court's conclusion on any theory established by the record (*Day v. Alta Bates Medical Center* (2002) 98 Cal.App.4th 243, 252, fn. 1). This principle is applicable even when the statement of decision lacks findings related to the theory, provided that the record unequivocally establishes the requisite facts. (*Mayer v. C.W. Driver* (2002) 98 Cal.App.4th 48, 63-64; see *McAdams v. McElroy* (1976) 62 Cal.App.3d 985, 996 [failure to make finding in statement of decision is
*(Fn. continued on next page.)*

the bankruptcy trustee or by Lee (should the trustee abandon the claims). As explained in *Cloud*, because the litigation of Lee's claims under those circumstances would nullify any "unfair advantage" to Lee or harm to the bankruptcy process, the application of judicial estoppel is not warranted. (*Cloud*, *supra*, 67 Cal.App.4th at pp. 1020-1021.) Moreover, a contrary determination would potentially frustrate the objectives of the bankruptcy statutes by penalizing Lee and her creditors while conferring a windfall on Yoon. (*Ibid*.)[14] Accordingly, we conclude that judicial estoppel does not bar further litigation of Lee's claims by the trustee or Lee (upon the trustee's abandonment of the claims).

---

harmless when the record conclusively establishes finding favorable to judgment].) Here, our conclusion relies on no factual determinations subject to challenge or dispute.

[14] The Ninth Circuit cases upon which An and JC 2020 rely do not conflict with our conclusion. Although the cases involved debtors who attempted to litigate claims in federal court that they failed to disclose during their bankruptcy proceedings, no challenge was raised to the debtors' standing, and the Ninth Circuit examined only the application of the "absence of ignorance, fraud, or mistake" requirement. (*Rose v. Beverly Health & Rehabilitation Services, Inc.*, *supra*, 295 Fed.Appx. at p. 144; *Elston v. Westport Ins. Co.*, *supra*, 253 Fed.Appx. at p. 699; *Hamilton v. State Farm Fire & Cas. Co.*, *supra*, 270 F.3d at pp. 785-786.) The decisions thus do not concern the issue presented in *Cloud*, namely, whether judicial estoppel would bar a Chapter 7 debtor from litigating a nondisclosed claim against a third party noncreditor in a California state court *after* curing the standing defect through bankruptcy proceedings. As explained above, *Cloud* concluded that if the debtor were to rectify the standing defect through the appropriate bankruptcy proceedings, there would be no further reason to invoke judicial estoppel in the California state action in order to protect the judicial process, the debtor's creditors, or the noncreditor third party. (*Cloud*, *supra*, 67 Cal.App.4th at p. 1021.)

19

B. *Remaining Contentions*

For the guidance of the trial court on remand, we address An and JC 2020's other contentions, to the extent they involve Lee.

### 1. *Collateral Estoppel*

An and JC 2020 contend that under the doctrine of collateral estoppel, Lee was precluded from showing that Yoon possessed the beneficial interest in the five properties. Generally, collateral estoppel prevents a party from relitigating issues that were "raised, actually submitted for determination and determined" in a prior action. (*Barker v. Hull* (1987) 191 Cal.App.3d 221, 226.) As noted above, during Lee's adversary action within Yoon's 2009 bankruptcy proceeding, the bankruptcy court granted partial "summary judgment" in favor of Yoon and against Lee with respect to Lee's contention that Yoon had concealed interests in the five properties. An and JC 2020 maintain this ruling barred the determination of Yoon's interests in the properties during the underlying action. For the reasons discussed below, we disagree.

Collateral estoppel ordinarily prevents the relitigation of an issue decided at a previous proceeding when the following threshold requirements are satisfied: "1) the issue to be precluded must be identical to that decided in the prior proceeding; 2) the issue must have been actually litigated at that time; 3) the issue must have been necessarily decided; 4) the decision in the prior proceeding must be final and on the merits; and 5) the party against whom preclusion is sought must be in privity with the party to the former proceeding." (*People v. Garcia* (2006) 39 Cal.4th 1070, 1077.) The party asserting collateral estoppel has the burden of establishing these elements. (See *Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341.) Defendants are entitled to claim that the plaintiff is barred from relitigating issues decided against the plaintiff in a previous action, even though the defendants

20

were not involved as parties in that action.  (*Bernhard v. Bank of America* (1942) 19 Cal.2d 807, 812-813; *Burdette v. Carrier Corp.* (2008) 158 Cal.App.4th 1668, 1688.)

Crucial to our analysis is the doctrine's requirement that the pertinent issue has been conclusively resolved in the prior proceeding.[15] (*In re Lisa R.* (1975) 13 Cal.3d 636, 646.)  Under this requirement, "[w]hen [the] determination of an issue was entirely unnecessary to the former judgment, it will not have collateral estoppel effect."  (*First N.B.S. Corp. v. Gabrielsen* (1986) 179 Cal.App.3d 1189, 1196; see 7 Witkin, Cal. Procedure (5th ed. 2008) Judgment, §§ 430, 432, pp. 1081, 1084-1086.)  Instructive applications of the requirement are found in *Albertson v. Raboff* (1956) 46 Cal.2d 375 (*Albertson*) and *Creative Ventures, LLC v. Jim Ward & Associates* (2011) 195 Cal.App.4th 1430 (*Creative Ventures*).

In *Albertson*, a creditor sought a money judgment against a woman and a lien on her property.  (*Albertson*, *supra*, 46 Cal.2d at p. 377.)  Following a bench trial, the creditor obtained a judgment awarding him damages, but denying him a lien on the property.  (*Id*. at p. 378.)  In issuing the judgment, the trial court found that although the creditor and the woman's husband had executed a writing in an effort to create a lien, the writing was legally incapable of doing so.  (*Id*. at p. 384.)

The woman then initiated an action for malicious prosecution against the creditor predicated on his defective cause of action for a lien.  (*Albertson*, *supra*, 46 Cal.2d at p. 378.)  After the malicious prosecution action was dismissed for failure to state a claim, our Supreme Court reversed.  (*Id*. at pp. 378, 385.)  In so

---

[15]     As An and JC 2020 note, the trial court appears to have concluded that the ruling in Yoon's bankruptcy proceeding had no collateral estoppel effect because it concerned a different issue from that presented in the underlying action.  However, as explained above (see fn. 13, *ante*), we will affirm that the trial court's conclusion on any theory is necessarily supported by the record.

21

ruling, the court rejected the creditor's contention that under the doctrine of collateral estoppel, the finding regarding his intent to create a lien barred any determination that he had asserted the lien-based claim in bad faith. (*Id*. at p. 385.) Although the court acknowledged that the finding -- viewed in isolation -- showed that the creditor had litigated the claim in good faith, the court concluded that it had no collateral estoppel effect. (*Id*. at pp. 384-385.) The court explained: "With respect to [the creditor's] claim of a lien . . . , the only finding necessary to sustain the trial court's judgment adverse to [the creditor] was the finding that the writing was insufficient to create a lien. The findings with respect to the intent and understanding of [the creditor] . . . were unnecessary to the judgment, and since [the woman] was the prevailing party as to the cause of action based on the [lien], she could not have attacked the unnecessary findings adverse to her on appeal." (*Ibid*.)

In *Creative Ventures*, two developers obtained loans from a mortgage lender owned by a licensed real estate broker. (*Creative Ventures*, *supra*, 195 Cal.App.4th at pp. 1436-1437.) Later, the California Department of Real Estate (DRE) initiated an administrative proceeding to subject the owner to discipline, alleging that the lender lacked a license. (*Id*. at pp. 1439, 1451.) Following hearings, an administrative law judge (ALJ) resolved that issue, concluding that the owner's own license should be revoked. (*Id*. at p. 1451.) The ALJ's statement of decision predicated its decision on certain findings, including that the owner was responsible for the conduct of the unlicensed lender. (*Id*. at pp. 1439, 1451.) In addition, in another portion of the statement of decision, the ALJ addressed the owner's inquiry regarding the DRE's reasons for pursuing the action with "'such fervor.'" (*Id*. at p. 1450.) Regarding that question, the ALJ stated that the owner's conduct was "'the product of a deliberate and stealth-like scheme to create

22

confusion within the [DRE] and . . . the mortgage brokerage industry.'" (*Id*. at p. 1450.)

Following the administrative proceeding, the developers initiated an action against the lender for usury and fraud, seeking damages and a penalty for usury. (*Creative Ventures*, *supra*, 195 Cal.App.4th at p. 1438.) Although the trial court found the lender liable for usury and fraud, it denied the usury penalty, concluding that the owner was merely "careless" or "mistaken" in his belief that the lender was licensed. (*Id*. at pp. 1435, 1450.) On appeal, the developers contended that under the doctrine of collateral estoppel, the ALJ's finding regarding the owner's "deliberate" scheme was binding on the trial court. (*Id*. at p. 1451.) In rejecting the contention, the appellate court reasoned that the ALJ's statement of decision clearly based the decision to discipline the owner on other findings. (*Ibid*.)

We conclude that An and JC 2020's contention fails for reasons similar to those present in *Albertson* and *Creative Ventures*. The limited record they have provided regarding Yoon's bankruptcy establishes that the ruling on which they rely was unnecessary to the judgment in Lee's favor in her adversary action within Yoon's bankruptcy. The bankruptcy court's memorandum of decision discloses that the "summary judgment" in Yoon's favor was, in fact, a summary adjudication on Lee's contention that Yoon possessed interests in the five properties. The memorandum further shows that the bankruptcy court denied Yoon a discharge due to the summary judgment in Lee's favor regarding whether Yoon's schedule of assets contained other material misstatements or omissions (11 U.S.C. § 727(a)(3), (a)(4)(A)). Indeed, An and JC 2020 acknowledge that the bankruptcy court denied Yoon a discharge on the basis of the summary judgment in Lee's favor.

Moreover, nothing before us suggests that Lee could have appealed from the summary judgment in Yoon's favor. As that ruling did not resolve the adversary action, it was a nonappealable "partial" summary judgment. (See *In re United Ins.*

23

*Management, Inc.* (9th Cir. 1994) 14 F.3d 1380, 1383 [summary judgment in bankruptcy proceeding is appealable only when it constitutes final disposition of all claims asserted].)  Nor could Lee have challenged the ruling through an appeal from the final disposition of the action -- namely, the summary judgment in her favor -- as she was not "aggrieved" by that disposition.  (*In re P.R.T.C., Inc.* (9th Cir. 1999) 177 F.3d 774, 776 [in bankruptcy litigation, appellant must be a "person aggrieved" by bankruptcy court's order].)  In sum, An and JC 2020 have failed to establish that the bankruptcy court's ruling barred Lee from showing that Yoon possessed a beneficial interest in the five properties.

2.  *Substantial Evidence*

An and JC 2020 contend there is insufficient evidence to support the findings that they held the five properties in express or resulting trusts for Yoon's benefit.  However, the record they have provided is inadequate to show error in these findings.  "A fundamental rule of appellate review is that '"[a] judgment or order of the lower court is presumed correct.  All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown."'  [Citations.]"  (*Conservatorship of Rand* (1996) 49 Cal.App.4th 835, 841, italics omitted.)  To overcome this presumption, appellants must provide an adequate record that demonstrates error.  (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295.)

In the case of challenges to the sufficiency of the evidence, error cannot be shown in the absence of the full evidentiary record.  (*In re Silva* (1931) 213 Cal. 446, 448 ["Without the benefit of the entire record, we cannot say that the evidence is insufficient to support the finding. . . ."]; *Rivard v. Board of Pension Commissioners* (1985) 164 Cal.App.3d 405, 412 ["[I]n all cases, the determination whether there was substantial evidence to support a finding or judgment must be

24

based on the whole record."].)  This is because on review for substantial evidence, "the power of an appellate court begins and ends with the determination as to whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support the determination [of the trier of fact]." (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873-874, italics deleted.)

Here, An and JC 2020 argue that no evidence was offered at trial to establish certain elements of the alleged resulting and express trusts.  However, the record contains a reporter's transcript only of Kim's and Lee's direct examinations during An and JC 2020's defense, and omits the other testimony at trial, including Kim and Lee's case-in-chief.  This partial record precludes review for the existence of substantial evidence.  (See *Haskins v. Crumley* (1957) 152 Cal.App.2d 64, 65-66 (*Haskins*) [despite appellants' avowals that their partial reporter's transcript was adequate to show insufficiency of evidence, appellate court ordered appeal dismissed unless appellants provided full reporter's transcript].)

We also reject An and JC 2020's suggestion that Lee was required to provide the portions of the reporter's transcript that their record omits.  Generally, appellants must provide the reporter's transcript necessary for their appeal. (*Bianco v. California Highway Patrol* (1994) 24 Cal.App.4th 1113, 1125.)  As An and JC 2020 failed to provide the reporter's transcript needed for their appeal, Lee was not obliged to cure the defect in the record.  (See *Haskins*, *supra*, 152 Cal.App.2d at pp. 65-66.)  In sum, An and JC 2020 have failed to demonstrate error in the findings regarding the five properties.


### 3. *Misstatement of Law and Special Verdict Form*

An and JC 2020 contend the trial court failed to correct a misstatement of law to the jury and permitted the use of a defective special verdict form.  As

explained below, we reject these contentions because only equitable issues were presented to the jury.

Generally, "'[a] jury trial is a matter of right in a civil action at law, but not in equity.' [Citations.]" (*C & K Engineering Contractors v. Amber Steel Co.* (1978) 23 Cal.3d 1, 8, quoting *Southern Pac. Transportation Co. v. Superior Court* (1976) 58 Cal.App.3d 433, 436.) Accordingly, when a complaint asserts legal and equitable claims, the plaintiff is entitled to a jury trial on the issues raised by the legal claims. (*Connell v. Bowes* (1942) 19 Cal.2d 870, 871.) In such actions, "the trial court may proceed to try the equitable issues first, without a jury (or . . . with an advisory jury)." (*Readeke v. Gibraltar Sav. & Loan Assn.* (1974) 10 Cal.3d 665, 671.) In contrast, when the plaintiff pursues purely equitable claims, "the granting or refusing of a demand for a jury trial as to some issue of fact . . . is a matter which is confided to the trial court's discretion and if a jury is allowed in such a case its verdict is merely advisory to the court." (*Union Oil Co. of California v. Reconstruction Oil Co.* (1937) 20 Cal.App.2d 170, 189-190 (*Union Oil*), reversed on another ground in *Pacific Western Oil Co. v. Bern Oil Co.* (1939) 13 Cal.2d 60, 71.)

Here, the FAC asserted both statutory claims for fraudulent transfer and equitable claims predicated on resulting and express trusts. Generally, actions to establish the existence of express and resulting trusts are equitable. (*Hise v. Superior Court* (1943) 21 Cal.2d 614, 624 ["An action to establish and impress a trust is a suit in equity."]; *Calistoga Civic Club v. City of Calistoga* (1983) 143 Cal.App.3d 111, 117-118 [a resulting trust is "a creature of equity"].) Thus, a judgment creditor's action to show that the judgment debtor has placed property in a trust to frustrate enforcement of the judgment is equitable in character, and a court of equity may take appropriate action to dissolve the trust for the benefit of the judgment creditor. (*Alhambra Bldg. & Loan Assn. v. De Celle* (1941) 47

Cal.App.2d 409, 411-413; see *Douglas v. Douglas* (1951) 103 Cal.App.2d 29, 34 ["[A] conveyance of land to a grantee who is to hold it in a secret trust for the true owner may be cancelled by a decree in equity."].) In such an action, the trial court, acting as a court of equity, may properly determine the extent to which the holders of the legal title to the property have a legitimate interest in it. (See *Alhambra Bldg. & Loan Assn. v. De Celle*, *supra*, 47 Cal.App.2d at p. 413.)

The record further discloses that Kim and Lee abandoned their statutory claims at trial, and submitted only their equitable claims to the trial court and jury. Because the FAC presented legal and equitable issues, the trial court apparently authorized a joint bench and jury trial. However, at the beginning of the trial, Allan Herzlich, Kim and Lee's counsel, informed the court that he would not pursue any statutory claim for constructive fraudulent transfer, but had not decided whether to abandon a statutory claim for intentional fraudulent transfer. Later, after the close of the presentation of evidence, Herzlich told the court that he intended to present only "an express or resulting trust theory" to the jury. The jury instructions and special verdict form thus focused exclusively on this theory. After the jury returned its special verdicts, Herzlich proposed a judgment that adopted the jury's special verdicts as advisory findings, contained findings on other issues not addressed by the jury, and imposed a single remedy, namely, an order directing the execution of grant deeds transferring the five properties to Yoon. The trial court entered the judgment as proposed.

Because the record establishes that the jury's role in the underlying proceeding was advisory, An and JC 2020's contentions fail. They maintain that the trial court erred in permitting the use of a special verdict form that asked the jury to determine the existence of express or resulting trusts, but did not require special verdicts regarding related issues, including the extent to which Yoon -- as opposed to AN, JC 2020, or the other defendants -- funded the purchase of the

27

properties. However, as explained above, the trial court was free to limit the issues upon which it sought advisory findings from the jury. (*Union Oil*, *supra*, 20 Cal.App.2d at pp. 189-190.) Accordingly, we find no error.

An and JC 2020 also contend the trial court erred by failing to correct a misstatement of law by Herzlich. During closing arguments, Herzlich asserted that an express trust can be created even though the trust beneficiary does not directly transfer the property to the trustee. When An and JC 2020's counsel objected to this statement, the trial court stated: "All right. Ladies and gentlemen, you'll be given a copy of the jury instructions. You can read the applicable law for yourself and form your own conclusions with regard to it." Later, the jury was instructed that "[t]o create an express trust[,] there need only be an explicit declaration of trust followed by an actual conveyance or transfer of property to the trustee."

This contention also fails in light of the jury's advisory role. Generally, when the jury acts in an advisory capacity in an equitable action, defects in the jury instructions are not a ground for reversing the judgment. (*Hartman v. Buford* (1966) 242 Cal.App.2d 268, 271; *Cutter Laboratories, Inc. v. R.W. Ogle & Co.* (1957) 151 Cal.App.2d 410, 412.) For this reason, Herzlich's purported misstatement of law cannot constitute reversible error.


## II

In the second appeal (B240154), Lee contends the trial court erred in denying her request to enforce the underlying judgment on the basis of Maven's judgment creditor lien. Because the underlying judgment in Lee's favor must be reversed due to her lack of standing, her contention is moot. Nonetheless, we address her contention for the guidance of the trial court on remand.

Lee's contention relies on the statutory scheme governing judgment creditor liens found in the Code of Civil Procedure.[16] Subdivision (a) of section 708.410 provides: "A judgment creditor who has a money judgment against a judgment debtor who is a party to a pending action . . . may obtain a lien under this article, to the extent required to satisfy the judgment creditor's money judgment, on both of the following:  [¶]  (1) Any cause of action of such judgment debtor for money or property that is the subject of the action or proceeding.  [¶]  (2) The rights of such judgment debtor to money or property under any judgment subsequently procured in the action or proceeding."  Subdivision (a) of section 708.440 further provides that "unless the judgment creditor's money judgment is first satisfied or the lien is released, the judgment recovered in the action . . . in favor of the judgment debtor may not be enforced by a writ or otherwise . . . ."

Here, the record discloses that Maven obtained a lien in the underlying action by filing a notice of lien and copies of its assignment and the pertinent judgment against Lee.[17]  In view of the lien, the trial court rejected Lee's motion for an order directing the clerk of the court to execute the pertinent grant deeds for the five properties.  The court's order states:  "Defendant's filing of a notice of lien . . . in this case[] means that the [j]udgment cannot be enforced."[18]

---

[16]     All further statutory citations are to the Code of Civil Procedure.

[17]     Subdivision (b) of section 708.410 provides:  "To obtain a lien under this article, the judgment creditor shall file a notice of lien and an abstract or certified copy of the judgment creditor's money judgment in the pending action or special proceeding."

[18]     We recognize that both the trial court and Lee appear to believe that Yoon -- rather than Maven -- is the true lien holder.  However, the sole evidence in the record regarding Yoon's relationship to the lien is that Yoon's defense counsel filed the notice of lien.  Because the identity of the true lien holder is not material

*(Fn. continued on next page.)*

29

Lee contends that the lien does not bar the enforcement of the underlying judgment in her favor because that judgment gave her no "rights . . . to money or property," within the meaning of section 708.410, subdivision (a)(2). The crux of Lee's argument is that the lien cannot attach to the judgment because it merely directs the transfer of the five properties to Yoon by grant deeds. For the reasons discussed below, we disagree.

As explained in *Abatti v. Eldridge* (1980) 103 Cal.App.3d 484, 489, the statutory scheme in question is remedial in character, and thus must be construed liberally to accomplish its purposes. There, the appellate court addressed a similar contention regarding the predecessor of section 708.410, which materially resembled the current statute. (*Abatti v. Eldridge, supra,* at pp. 486-487.) After two property owners were sued for specific performance of a contract to sell their property, the trial court granted a motion by the owners' judgment creditor to impose a lien on any potential judgment against them. (*Id*. at p.486.) On appeal, the owners maintained that the lawsuit involved no "cause of action" that they possessed or asserted, as they were defendants in the action. (*Id*. at pp. 487-489.) The appellate court rejected their contention, reasoning that the term "cause of action," as found in the statute, must be construed broadly to mean *any* right to

---

to our analysis, we do not address or decide that question. For simplicity, we refer to the lien holder as Maven.

We also note that the trial court's order denying Lee's motion also appears to rely on an alternative ground, namely, that the vacation of Kim's default judgment impaired Lee's entitlement to enforce the underlying judgment in her favor due to Kim's and Lee's intertwined trial evidence. Because Lee's judgment must be reversed for the reasons discussed above (see pt.I.A., *ante*), we limit our inquiry to the issue regarding Maven's lien, as only that ground for the court's ruling is likely to be relevant to any future judgment.

recover in the action, in order to promote the statute's remedial purposes. (*Id*. at pp. 487-488.) The court thus concluded that a judgment against the owners would afford them such a "cause of action," as specific performance of the contract would require the payment of money to them. (*Id.* at pp. 488-489.)

In our view, a similarly broad construction must be placed on the phrase, "[t]he rights of [the] judgment debtor to money or property under any judgment . . . procured in the action," as found in section 708.410, subdivision (a)(2). Furthermore, the record establishes that the judgment provided Lee such a right. As explained above (see pt.I.A.a., *ante*), Lee's standing to assert claims for express and resulting trusts was predicated on her judgment lien based on her default judgment against Yoon. Prior to the underlying action, that lien attached to all of Yoon's interests in real property, "including equitable interests." (*Fidelity National*, *supra*, 179 Cal.App.4th at p. 849.) Because the underlying judgment directed the transfer of legal title regarding the five properties to Yoon, the net effect of the judgment was to *enhance* Lee's judgment lien rights regarding Yoon's real property interests. Because the section 708.410 is intended to facilitate the enforcement of such lien rights, the underlying judgment is properly regarded as having afforded Lee "rights . . . to money or property," within the meaning of the statute. We therefore find no error in the trial court's ruling.

31

## DISPOSITION

The judgment is reversed.  With respect to Kim, the trial court is directed to dismiss his action.  With respect to Lee, the matter is remanded to the trial court with directions to afford Lee a reasonable opportunity to secure either (a) the bankruptcy trustee's participation as real party in interest or (b) the trustee's abandonment of the default judgment (and the right to enforce it), and to conduct all further proceedings in accordance with this opinion.  An and JC 2020 are awarded their costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MANELLA, J.

We concur:

EPSTEIN, P. J.

WILLHITE, J.