[No. B220441. Second Dist., Div. Five. June 10, 2011.]

M & M FOODS, INC., Plaintiff and Appellant, v.
PACIFIC AMERICAN FISH CO., INC., et al., Defendants and Respondents.

## COUNSEL

Paul A. Wollam for Plaintiff and Appellant.

Nemecek & Cole, Jonathan B. Cole, Michael W. Feenberg and Susan S. Baker for Defendants and Respondents.

OPINION

MOSK, J.—

## INTRODUCTION

M & M Foods, Inc. (M&M), filed a complaint against Pacific American Fish Co., Inc., Paul Huh, and Peter Huh[1] and then petitioned the trial court to compel arbitration based on an arbitration clause in an asset purchase agreement between the parties. Pacific opposed the petition, arguing, inter alia, that M&M lacked standing to enforce the arbitration provision because the right to do so belonged exclusively to the trustee of M&M's former bankruptcy estate. The trial court denied the petition on that ground, as well as on others. On appeal, M&M argues, inter alia, that because the bankruptcy trustee abandoned the claims asserted in M&M's complaint, those claims reverted to M&M, along with the right to arbitrate them pursuant to the arbitration clause in the asset purchase agreement.

We hold that because M&M failed in the bankruptcy proceeding to schedule the claims asserted in the complaint, those claims had not been abandoned, and only the trustee had the right to compel arbitration of those claims. Accordingly, we affirm the order of the trial court denying the petition to compel arbitration.

## FACTUAL[2] AND PROCEDURAL BACKGROUND

### A. *The Arbitration Clause*

In March 2004, M&M entered into an asset purchase agreement with Pacific American. The agreement contained an arbitration clause that provided in pertinent part, as follows: "Any controversy or claim arising out of or related to this Agreement, its enforcement or interpretation, or because of an alleged breach, default or misrepresentation in connection with any of its provisions, or arising out of [or] relating in any way to the relationship between the parties, shall be determined by binding arbitration."

### B. *M&M's Bankruptcy*

In July 2005, M&M filed a voluntary chapter 7 bankruptcy petition. M&M's petition listed as personal property, "Debtor's interest in collections

---

[1] Defendants and respondents will be referred to collectively as Pacific. When necessary for clarity, we will refer to the corporate respondent as Pacific American and to the individual respondents by their names.

[2] Because the issues on appeal arise from the denial of a petition to compel arbitration, the facts are taken from the evidence submitted in support of and opposition to the petition.

obtained on outstanding accounts receivable from former business activities," and stated the value of that property as "unknown." The petition did not list any contingent claims against Pacific American, Peter Huh, or Paul Huh. In April 2006, the bankruptcy court issued an order closing M&M's bankruptcy case.

### C. *The Silver Action*

In August 2006, Marvin Silver sued Pacific and Four Seasons Fine Foods in the superior court. Pacific American responded by filing a cross-complaint against Marvin Silver and his brother, Michael Silver. Although Pacific American did not serve its cross-complaint on Michael Silver, he nevertheless answered and filed his own cross-complaint against Pacific alleging, inter alia, that Pacific had breached the asset purchase agreement and a related employment agreement (the Silver action). In June 2008, the trial court held a bifurcated trial in the Silver action on two of Pacific's affirmative defenses. The trial court ruled in favor of Pacific and, in December 2008, rendered a statement of decision and entered judgment dismissing the Silver action. Michael Silver filed a notice of appeal from, inter alia, the trial court's judgment in the Silver action. We affirmed the judgment in favor of Pacific American, Peter Huh, and Paul Huh and dismissed Michael Silver's purported appeal from the trial court's postjudgment order awarding Pacific attorney fees.

### D. *The Instant Action*

While the appeal in the Silver action was still pending, M&M filed this action against Pacific for conversion, breach of contract, and breach of personal guarantee. The trial court subsequently found this case to be related to the Silver action and assigned this case to the same trial court in which the Silver action was pending. M&M filed a petition to compel arbitration. In opposition to the petition to compel arbitration, Pacific argued that M&M lacked standing to compel arbitration, Peter and Paul Huh did not agree to arbitrate, and M&M had waived the right to arbitrate. The trial court denied the petition "for the reasons argued by Pacific American, Peter Huh and Paul Huh, in their moving [*sic*] papers and orally at the hearing." M&M filed a timely notice of appeal from the order denying its petition to compel arbitration.

## DISCUSSION

### A. *Standing*

#### 1. *Standard of Review*

■ The trial court's determination that M&M lacked standing to enforce the arbitration clause in the asset purchase agreement is reviewed on appeal under a de novo standard. "[A] petition to compel arbitration is heard in the same manner as any other motion. Factual issues are resolved by the trial court based on conflicting affidavits or declarations and, at the court's discretion, even oral testimony. (*Brookwood v. Bank of America* (1996) 45 Cal.App.4th 1667, 1670 [53 Cal.Rptr.2d 515].)" (*City of Hope v. Bryan Cave, L.L.P.* (2002) 102 Cal.App.4th 1356, 1369 [126 Cal.Rptr.2d 283].) In *Smith v. Microskills San Diego L.P.* (2007) 153 Cal.App.4th 892 [63 Cal.Rptr.3d 608] (*Smith*), the court stated, " ' "The determination of standing to arbitrate as a party to the contractual arbitration is a question of law for the trial court in the first instance. [Citation.]" ' " (*Id.* at p. 900, quoting *City of Hope v. Bryan Cave, L.L.P., supra*, 102 Cal.App.4th at p. 1369.)[3]

#### 2. *Applicable Legal Principles*

■ "[W]hen a petitioner files a petition to compel arbitration . . . , a trial court must make preliminary factual determinations whether (1) there is an arbitration agreement; and (2) the petitioner is a party to that agreement or can otherwise enforce that agreement. (Code Civ. Proc., § 1281.2.) Code of Civil Procedure section 1281.2 authorizes petitions to compel arbitration, providing in part: 'On petition of a *party to an arbitration agreement* alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy *if it determines that an agreement to arbitrate the controversy exists* . . . .' (Italics added.) Therefore, in considering a Code of Civil Procedure section 1281.2 petition to compel arbitration, a trial court must make the preliminary determinations whether there is an agreement to arbitrate and whether the petitioner is a party to that agreement (or can otherwise enforce the agreement). (*City of Hope v. Bryan Cave, L.L.P.*[, *supra*,] 102 Cal.App.4th [at p.] 1369 . . . ['[I]n addition to determining whether an arbitration agreement exists, the court needs to determine who has standing to demand arbitration.'].)" (*Bouton v. USAA Casualty Ins. Co.* (2008) 167 Cal.App.4th 412, 423–424 [84 Cal.Rptr.3d 152] (*Bouton*).)

---

[3] Although *Smith* and other similar cases involve "standing" in connection with whether the person or entity seeking arbitration is a party to the agreement to arbitrate, there is no meaningful distinction between "standing" in that sense and the "standing" of a party to an agreement whose rights in the agreement arguably no longer exist.

### 3. Adjudication of Standing Issue

M&M contends that in determining whether M&M had standing to enforce the arbitration provision, the trial court decided an issue that was outside the scope of the issues properly before it on a petition to compel arbitration. According to M&M, because standing was an issue related to the underlying merits of the action, that issue could not be decided on a petition to compel arbitration and was a matter for the arbitrator to decide, not the trial court.

In *Bouton, supra*, 167 Cal.App.4th 412, the plaintiff sought to arbitrate his claim for underinsured motorist benefits under an automobile policy issued to his sister. (*Id.* at p. 416.) He contended, inter alia, that in ruling on his petition to compel arbitration, the trial court could decide the preliminary issue of whether he was an insured under the policy with standing to enforce the arbitration provision. (*Id.* at p. 423.) The defendant insurance company contended that the question of whether the plaintiff was an insured under the policy could not be decided in the proceedings on the petition and could only be decided in a separate action for declaratory relief. (*Ibid.*)

The court in *Bouton, supra*, 167 Cal.App.4th 412 analogized the issue before it to cases in which the trial court makes the preliminary determination whether the petitioner is a party to an arbitration agreement. "[W]e conclude the instant case is analogous to those cases in which the trial court makes the preliminary determination whether the petitioner is a party to, or can otherwise enforce, an arbitration agreement. For example, in deciding a petition to compel arbitration, a trial court may decide, based on the evidence before it, that the petitioner is a third party beneficiary to an existing arbitration agreement and therefore may enforce that agreement. That preliminary finding by a trial court on the petitioner's 'standing' to compel arbitration of a controversy is one properly made in the proceedings on a petition to compel arbitration." (*Id.* at p. 425.)

The court in *Bouton, supra*, 167 Cal.App.4th 412 explained that "[t]he issue in this case is not significantly different, even if not identical[, to the standing issue in third party beneficiary cases]. [The] trial court must decide whether [the plaintiff] is an insured under the Policy entitled to enforce the Policy's arbitration provision. Therefore, the trial court, in effect, must determine whether [the plaintiff] has standing, as an insured, to enforce the Policy's arbitration provision. Because that preliminary question of standing is so closely connected and is a predicate to the ultimate determination whether to compel arbitration of the Policy's arbitration provision, it is not only logical, but also most efficient, to have the trial court determine that question in the proceedings on the Petition, rather than in a separate action for declaratory relief. Because [the plaintiff] initially chose to file a petition to

compel arbitration of the Policy's arbitration provision, the trial court in this case *should* have addressed and determined *in the proceedings on the Petition* the question whether he is an insured under the Policy entitled to enforce the Policy's arbitration provision. [The plaintiff] was *not* required to file a separate action for declaratory relief to obtain a determination by a trial court on that question of standing to enforce the Policy's arbitration provision." (*Id.* at pp. 425–426; see also Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 2010) ¶ 5:287, pp. 5-198.5 to 5-198.6 (rev. # 1, 2010) ["a trial court must first determine the status of a person who demands arbitration under a contract he or she did not sign . . ."].)

█ In this case, M&M chose to petition the trial court to compel arbitration. In doing so, M&M requested that the trial court determine all predicate issues necessary to the ultimate determination of M&M's entitlement to compel arbitration. One such issue was whether M&M had standing to enforce the arbitration clause. Thus, regardless of whether that issue was related to the underlying merits of the action, because the issue concerned whether to compel arbitration, the trial court should treat that determination as a preliminary question necessary to resolve the issue raised by the petition.

### 4. *Determination of Standing*

The trial court agreed with Pacific's assertion that M&M lacked standing to enforce the arbitration provision in the asset purchase agreement because the trustee of M&M's bankruptcy estate was the only party with standing to prosecute the claims that M&M sought to arbitrate. M&M contends on appeal that because its claims against Pacific were scheduled in the bankruptcy proceeding, they were abandoned by the trustee when the estate closed and reverted to M&M. M&M bases this contention on the following entry in a schedule of assets attached to its bankruptcy petition: "Debtor's interest in collections obtained on outstanding accounts receivable from former business activities." The schedule of assets also indicated that the value of the accounts receivable was "unknown."

"As a general matter, upon the filing of a petition for bankruptcy, 'all legal or equitable interests of the debtor in property' become the property of the bankruptcy estate and will be distributed to the debtor's creditors. [11 U.S.C. section] 541(a)(1)." (*Rousey v. Jacoway* (2005) 544 U.S. 320, 325 [61 L.Ed.2d 563, 25 S.Ct. 156].) The Historical and Statutory Notes for 11 U.S.C. section 541 provide: "This section defines property of the estate, and specifies what property becomes property of the estate. The commencement of a bankruptcy case creates an estate. [T]he estate is comprised of all legal or equitable interest of the debtor in property, wherever located, as of the commencement

of the case. The scope of this paragraph is broad. It includes all kinds of property, including tangible or intangible property, [and] *causes of action* . . . ." (Revision Notes and Legislative Reports, 1978 Acts, 11 U.S.C.A. (2004) foll. § 541, p. 6, italics added.)

■ "In the context of bankruptcy proceedings, it is well understood that 'a trustee, as the representative of the bankruptcy estate, is the real party in interest, and is the only party with standing to prosecute causes of action belonging to the estate once the bankruptcy petition has been filed.' *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 385 (5th Cir. 2008) (per curiam). The commencement of Chapter 7 bankruptcy extinguishes a debtor's legal rights and interests in any pending litigation, and transfers those rights to the trustee, acting on behalf of the bankruptcy estate. *See* 11 U.S.C. § 541(a)(1) (indicating that a bankruptcy estate includes 'all legal or equitable interests. of the debtor in property'); *id.* § 323 (establishing the bankruptcy trustee as the 'representative' of the estate with the 'capacity to sue and be sued' on its behalf). Thus, '[g]enerally speaking, *a pre-petition cause of action is the property of the Chapter 7 bankruptcy estate*, and only the trustee in bankruptcy has standing to pursue it.' (*Parker* [*v. Wendy's Internat., Inc.* (11 Cir. 2004)] 365 F.3d [1268,] 1272; *accord Turner v. Cook*, 362 F.3d 1219, 1225–26 (9th Cir. 2004); *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 535 (4th Cir. 1997)." (*Moses v. Howard University Hospital* (D.C. Cir. 2010) 91 U.S. App.D.C. 21 [606 F.3d 789, 795 ], italics added.)

M&M's complaint against Pacific alleges that Pacific converted approximately $700,000 in accounts receivable and committed other unspecified breaches of the asset purchase agreement and the personal guarantee agreement. According to M&M, Pacific American was obligated under the asset purchase agreement to collect outstanding accounts receivable on behalf of M&M and the creditors of M&M, but nevertheless withheld approximately $700,000 in such receivables without disclosing that fact to any person or entity with an interest in those receivables, including M&M.

In its opening brief, M&M identifies the $700,000 receivables claim as the dispute or controversy allegedly subject to arbitration. M&M also concedes that Pacific American's obligation to collect such receivables on behalf of M&M ended in September 2004. Thus, M&M's alleged right to the $700,000 in receivables arose prior to September 2004, well before M&M's July 2005 bankruptcy petition. Upon the filing of M&M's bankruptcy petition, whatever interest M&M had in the receivables collected by Pacific passed to and became the property of the bankruptcy estate and could be pursued only by the trustee of that estate from and after filing of the bankruptcy petition in July 2005.

M&M does not challenge the trial court's implicit finding that the $700,000 receivables claim was the property of the bankruptcy estate. Instead, M&M contends that the claim reverted to it by operation of law when the bankruptcy estate closed in April 2006.

■ "An outstanding legal claim that is abandoned by the trustee reverts back to the original debtor-plaintiff. *See* 11 U.S.C. § 554(a) (directing that '[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome . . . or that is of inconsequential value and benefit to the estate'); *id.* § 554(c) (directing that 'any property scheduled . . . [but] not otherwise administered at the time of the closing of a case is abandoned to the debtor and [considered] administered'). ' "[U]pon abandonment . . . the trustee is . . . divested of control of the property because it is no longer part of the estate. . . . Property abandoned under [§] 554 reverts to the debtor, and the debtor's rights to the property are treated as if no bankruptcy petition was filed." ' *Kane* [*v. Nat'l Fire Ins. Co., supra,*] 535 F.3d at 385 (quoting 5 COLLIER ON BANKRUPTCY ¶ 554.02[3], p. 554-5); *see also Parker* [*v. Wendy's Internat., Inc., supra*], 365 F.3d at 1272. [¶] Whatever interest passed to the trustee when [the debtor] filed for Chapter 7 bankruptcy [is] extinguished when [the trustee] abandon[s] the cause of action . . . . *Cf. Brown v. O'Keefe,* 300 U.S. 598, 602, 57 S.Ct. 543, 81 L.Ed. 827 (1937). In other words, 'when property of the bankrupt is abandoned, the title reverts to the bankrupt, *nunc pro tunc,* so that he is treated as having owned it continuously.' *Morlan* [*v. Universal Guaranty Life Ins. Co.* (7th Cir. 2002)] 298 F.3d [609,] 617 (internal quotation marks and citation omitted) (emphasis added)." (*Moses v. Howard University Hospital, supra,* 606 F.3d at p. 795.) But property not formally scheduled in the bankruptcy proceeding is *not abandoned* at the close of the bankruptcy proceeding, even if the trustee was aware of the existence of the property. (*Vreugdenhill v. Navistar Internat. Transportation Corp.* (8th Cir. 1991) 950 F.2d 524, 526.)

■ M&M maintains that it formally scheduled the $700,000 receivables claim by listing its "interest in collections from accounts receivable from former business activities" in its bankruptcy petition. In a bankruptcy proceeding, the "bankruptcy code place[s] an affirmative duty on [the debtor] to schedule his assets and liabilities. [11 U.S.C.] § 521(1). If he fail[s] properly to schedule an asset, including a cause of action, that asset continues to belong to the bankruptcy estate and [does] not revert to [the debtor]. *See Stein v. United Artists Corp.,* 691 F.2d 885, 893 (9th Cir.1982) (holding that only property 'administered or listed in the bankruptcy proceedings' reverts to the bankrupt); *accord Hutchins v. IRS,* 67 F.3d 40, 43 (3d Cir.1995); *Vreugdenhill v. Navistar Int'l Transp. Corp.*[, *supra,*] 950 F.2d [at p.] 526 . . . (holding that property is not abandoned by operation of law unless the debtor 'formally schedule[s] the property before the close of the case'). [¶] '[T]he debtor has a duty to *prepare schedules carefully, completely, and*

*accurately.' In re Mohring,* 142 B.R. 389, 394 (Bankr.E.D.Cal.1992); *accord In re Jones,* 134 B.R. 274, 279 (N.D.Ill.1991); *In re Baumgartner,* 57 B.R. 513, 516 (Bankr.N.D.Ohio 1986); *In re Mazzola,* 4 B.R. 179, 182 (Bankr.D.Mass.1980). Although there are 'no bright-line rules for how much itemization and specificity is required,' [the debtor] was required to be *as particular as is reasonable* under the circumstances. *In re Mohring,* 142 B.R. at 395." (*Cusano v.Klein* (9th Cir. 2001) 264 F.3d 936, 945–946, italics added.)

■ M&M's asset disclosure schedule did not mention Pacific American, M&M, or the asset purchase agreement, much less the accounts receivable Pacific American was obligated to collect on behalf of M&M under that agreement. If, as M&M now contends, the reference to "[d]ebtor's interest in collections obtained on outstanding accounts receivable from former business activities" was meant to refer to the accounts receivable to be collected by Pacific American under the asset purchase agreement, M&M had to make that clear, i.e., M&M was required to be "as particular as is reasonable under the circumstances." (*Cusano v. Klein, supra,* 264 F.3d at p. 946.) One purpose of the schedule is to provide the trustee and creditors with a description of personal assets sufficient to allow a determination as to whether and to what extent a given asset has potential value and benefit to the estate. The listing as phrased by M&M provides no indication as to the party responsible for collecting on the accounts or to which "business activities" the accounts relate. The vagueness of the listing supports a finding that the $700,000 accounts receivable claim asserted in M&M's complaint was not scheduled adequately in M&M's bankruptcy proceeding. That finding, in turn, supports the trial court's implicit legal conclusion that the claim had not been abandoned by the trustee.

Absent abandonment, the right to pursue the $700,000 accounts receivable claim did not revert to M&M, and, therefore, M&M had no right to arbitrate that claim. That right remained with the trustee of M&M's bankruptcy estate. Accordingly, the trial court correctly determined that M&M had no standing to arbitrate the claims asserted in its complaint against Pacific and properly denied the petition to compel arbitration.

### B. *Other Contentions*

Because we affirm the trial court's denial of the petition to compel arbitration on the standing ground, we do not reach the other contentions raised by the parties, including Pacific's alternative contentions of waiver and estoppel and the individual respondents' contention that they are not bound by the arbitration provision in the asset purchase agreement between Pacific American and M&M.

## DISPOSITION

The order denying M&M's petition to compel arbitration is affirmed. Pacific American, Paul Huh, and Peter Huh are awarded their costs on appeal.

Armstrong, Acting P. J., and Kriegler, J., concurred.