Filed 4/8/14  Southern v. Rush Truck Centers CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| TROY SOUTHERN, | |
| Plaintiff and Appellant, | E053752 |
| v. | (Super.Ct.No. CIVDS907869) |
| RUSH TRUCK CENTERS OF CALIFORNIA, INC., | **OPINION** |
| Defendant and Respondent. | |

APPEAL from the Superior Court of San Bernardino County.  Donna G. Garza, Judge.  Affirmed.

Troy Southern, in pro. per.; Law Offices of John R. Setlich and John R. Setlich for Plaintiff and Appellant.

Chapman Glucksman Dean Roeb & Barger, Craig A. Roeb and Grace A. Nguyen for Defendant and Respondent.

1

In January 2008, plaintiff Troy Southern learned that a truck that he had purchased as new from defendant Rush Truck Centers of California, Inc. (Rush) had actually been damaged in a previous accident. In June 2008, he filed a Chapter 7 bankruptcy; his schedules did not list his claim against Rush as an asset. In June 2009, he filed this action against Rush. Later, his debts were discharged and the bankruptcy was closed.

The trial court granted summary judgment in favor of Rush. It ruled that Southern lacked standing, because his claim had become part of the bankruptcy estate, and because his failure to schedule the claim prevented the claim from being automatically abandoned by the trustee when the bankruptcy was closed.

Southern acknowledges that, as a general rule, unscheduled property remains part of the bankruptcy estate. However, he tries to bring himself within *Morlan v. Universal Guar. Life Ins. Co.* (7th Cir. 2002) 298 F.3d 609, which declined to apply the rule under the peculiar circumstances of that case. We will conclude that *Morlan* is distinguishable. Hence, we will affirm.

I

FACTUAL BACKGROUND

The following facts are taken from the evidence and the judicially noticeable matters submitted in connection with Rush's motion for summary judgment. However, we disregard those matters to which the trial court sustained objections. (Code Civ. Proc., § 437c, subd. (c).)

In June 2008, Southern filed for bankruptcy under Chapter 7. His schedules listed a Peterbilt truck and valued it at $70,000. However, they did not list any claim against Rush.

In August 2008, at the meeting of creditors (11 U.S.C. § 341(a)), there was this dialogue:

"Q: . . . You have a Peterbilt truck?

"A: Yes.

"Q: What year?

"A: 2003. [¶] . . . [¶] . . .

"Q: And what do you think the value of the truck is?

"A: Between $10,000.00 and $12,000.00.

"Q: Counsel[,] you seem to think that the truck's worth about $70,000.00.

"[SOUTHERN'S BANKRUPTCY COUNSEL]: When we did it originally, when we filled out, that was what he was estimating it at. Since filing, he's found out that the truck was actually in an accident before being sold to him and that it should have been sold to him as a salvage truck and not a new truck and I think that you found out that trying to sell a salvage truck, $12,500.00 is about all he's going to be able to get for it. And that's another thing we've got to do and we've got to amend our petition because we found out that they misrepresented the truck to him.

"Q: Who did this?

"A: The Rush Truck Center in Pico Rivera.

3

"Q: So we have a claim against Rush Truck Center for selling us a bad truck.

"[SOUTHERN'S BANKRUPTCY COUNSEL]: Yeah, we do and that's got to be amended and listed."

However, Southern (and his bankruptcy counsel) never actually amended his schedules.

In June 2009, Southern filed this action against Rush. He asserted various causes of action, including fraud, all arising out of his purchase of a Peterbilt truck in 2003; he alleged that, although Rush sold the truck as new, he discovered in January 2008 that it had actually been in an accident before he bought it.

In October 2009, Southern's debts were discharged, and in November 2009, his bankruptcy was closed.

II

THIS ACTION IS NOT SOUTHERN'S TO BRING

"The Bankruptcy Code and rules require a debtor to file various 'schedules,' including a 'schedule of assets.' [Citations.]" (*Gottlieb v. Kest* (2006) 141 Cal.App.4th 110, 132-133.) "'' . . . [A] debtor is required to disclose *all potential causes of action.*" . . . "'The debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information . . . to suggest that it may have a possible cause of action, then that is a "known" cause of action such that it must be disclosed.'" . . . "*Any claim with potential must be disclosed*, even if it is 'contingent, dependent, or conditional.'"' [Citation.]" (*Id*. at p. 133.)

4

"' . . . [U]pon the filing of a petition for bankruptcy, "all legal or equitable interests of the debtor in property" become the property of the bankruptcy estate and will be distributed to the debtor's creditors. [11 U.S.C. §] 541(a)(1).' [Citation.]" (*M & M Foods, Inc. v. Pacific American Fish Co., Inc.* (2011) 196 Cal.App.4th 554, 561-562.) "The scope of section 541 is broad and 'property' includes causes of action. [Citation.]" (*Haley v. Dow Lewis Motors, Inc.* (1999) 72 Cal.App.4th 497, 503-504.)

"' . . . The commencement of Chapter 7 bankruptcy extinguishes a debtor's legal rights and interests in any pending litigation, and transfers those rights to the trustee, acting on behalf of the bankruptcy estate. [Citations.] Thus, "[g]enerally speaking, *a pre-petition cause of action is the property of the Chapter 7 bankruptcy estate*, and only the trustee in bankruptcy has standing to pursue it." [Citations.]' [Citation.]" (*M & M Foods, Inc. v. Pacific American Fish Co., Inc.*, *supra*, 196 Cal.App.4th at p. 562.)

"'An outstanding legal claim that is abandoned by the trustee reverts back to the original debtor-plaintiff. [Citations.] "'[U]pon abandonment . . . the trustee is . . . divested of control of the property because it is no longer part of the estate. . . . Property abandoned under [11 U.S.C. §] 554 reverts to the debtor, and the debtor's rights to the property are treated as if no bankruptcy petition was filed.'" [Citations.] . . .' [Citation.]" (*M & M Foods, Inc. v. Pacific American Fish Co., Inc.*, *supra*, 196 Cal.App.4th at pp. 563.)

Under 11 United States Code section 554, property of the bankruptcy estate can be abandoned in three ways:

1.  "*After notice and a hearing*, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." (11 U.S.C. § 554(a), italics added.)

2.  "On request of a party in interest and *after notice and a hearing*, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." (11 U.S.C. § 554(b), italics added.)

3.  "[A]ny property *scheduled* [and] not otherwise administered at the time of the closing of a case is abandoned to the debtor . . . ." (11 U.S.C. § 554(c), italics added.)

However, "[u]nless the court orders otherwise, property of the estate that is not abandoned . . . remains property of the estate." (11 U.S.C. § 554(d).)

To summarize, then, "property not formally scheduled in the bankruptcy proceeding is *not abandoned* at the close of the bankruptcy proceeding . . . . [Citation.]" (*M & M Foods, Inc. v. Pacific American Fish Co., Inc.*, *supra*, 196 Cal.App.4th at p. 563.) This is true even if the trustee had actual knowledge of the existence of the property. (*Ibid.*; *Jeffrey v. Desmond* (1st Cir. 1995) 70 F.3d 183, 186; *Vreugdenhill v. Navistar Int'l Transp. Corp.* (8th Cir. 1991) 950 F.2d 524, 526.)

Here, Southern alleges that he was aware of the facts underlying this action in January 2008. Nevertheless, in June 2008, when he filed the bankruptcy, he failed to schedule his claim against Rush. Accordingly, when the bankruptcy was closed, the

6

claim remained property of the bankruptcy estate. The trustee has standing to litigate it; Southern does not.

Southern relies on *Morlan v. Universal Guar. Life Ins. Co.*, *supra*, 298 F.3d 609. Because it is central to his arguments, we discuss it in some detail. There, plaintiff Morlan filed a class action; subsequently, he filed a bankruptcy. (*Id*. at p. 614.) He did not list the class action in his schedules. (*Id*. at p. 618.) At a creditors' meeting, however, he remarked, "I think I might be involved in a class action lawsuit involving an insurance company I used to work for . . . ." (*Id*. at p. 617.) The trustee wrote a letter to Morlan's lawyer, stating that he "had decided to 'abandon any claim the bankruptcy estate might have to any future proceeds arising from [the class action]' . . . ." (*Id*. at p. 617.) The trustee then filed a statement abandoning "'any *scheduled* property . . . .'" (*Id*. at p. 618.) The bankruptcy court approved the statement and closed the bankruptcy. (*Id*. at pp. 617-618.)

The appellate court stated, "[W]e begin by noting that it was virtually inevitable that the trustee would abandon the claim, precisely because it was the claim of the representative plaintiff in a class action suit . . . . The named plaintiff in a class action usually has only a small stake in the action, [citations], and while the stakes for the class as a whole may be large, very few of the benefits of settling the class action or prosecuting it to judgment would be received by the trustee (which is to say the creditors), since he would just be the named plaintiff's surrogate. Most of the benefits would go to the other members of the class and to the lawyers for the class, so that the

7

trustee, as class representative yet having fiduciary obligations exclusively to the estate in bankruptcy, would have a potential conflict of interest . . . ." (*Id.* at p. 619.) "The expenses the trustee incurred in prosecuting the claim would be subtracted from the assets of the estate in bankruptcy, though it turned out there were no other assets — another good reason for abandonment of the debtor's claim:  how was the trustee to finance the class action?" (*Ibid.*)

The court added, "[I]t is doubtful that any of Morlan's creditors would have wanted the trustee to involve himself in the class action, though this would depend on the value of Morlan's claim, which we don't know." (*Morlan v. Universal Guar. Life Ins. Co.*, *supra*, 298 F.3d at p. 619.)[1]

It concluded:  "The defendants' argument amounts to saying that they, because Morlan's creditors might still try to take away Morlan's claim from him, cannot be sued; that they, because the trustee or the bankruptcy judge may have dropped the ball, are to get off scot free.  We cannot see the sense of that." (*Morlan v. Universal Guar. Life Ins. Co.*, *supra*, 298 F.3d at p. 621.)

Finally, the court added that there was "an alternative basis for rejecting the defendants' challenge to Morlan's standing.  The steps that the trustee took to abandon Morlan's claim would suffice to establish abandonment under the ordinary principles

---

**1**      The court speculated that Morlan's creditors "might well" be barred by laches from reopening the bankruptcy. (*Morlan v. Universal Guar. Life Ins. Co.*, *supra*, 298 F.3d at p. 620.)  At the same time, however, it conceded that at least some of them might not be barred by laches; ultimately, it declined to decide the laches issue. (*Ibid.*)

applicable to abandonment, [citations], a fundamental doctrine of property law; it is only the provisions of the Bankruptcy Code regarding abandonment that cast doubt on whether Morlan's claim really did revest in him. But those provisions are intended for the benefit of creditors, none of whom complained or is complaining about the trustee's failure to comply with them. They are not intended for the benefit of alleged violators of the debtor's legal rights, and so the defendants are the ones who lack standing — standing to object to the abandonment of Morlan's claim. [Citations.]" (*Morlan v. Universal Guar. Life Ins. Co.*, *supra*, 298 F.3d at p. 621.)

Southern argues that, under *Morlan*, he should be allowed to litigate his claim because the trustee probably would have abandoned it, and because his creditors probably would have wanted the trustee to abandon it. Here, however, unlike in *Morlan*, there is no evidence that it was "virtually inevitable" that, if the claim had been properly scheduled, the trustee would have abandoned it. It must be remembered that, in *Morlan*, the trustee stated — in writing — that he intended to abandon the claim. Nevertheless, the court discussed (in some detail) the likelihood that the trustee would have litigated a class action; it determined that abandonment was a foregone conclusion.

By contrast, here, the trustee never stated that he intended to abandon Southern's claim. Quite the contrary, at the creditors' meeting, he expressed some interest in it; he questioned Southern about it, and he pronounced, "So we have a claim against Rush Truck Center for selling us a bad truck." In addition, the claim was not a class claim; thus, none of the *Morlan* court's concerns about the feasibility of having a bankruptcy

trustee act as a class representative applied here. Actually, Southern's claim (if meritorious) was valuable and thus worth financing. Southern was claiming approximately $57,500 in compensatory damages; moreover, because his legal theories included intentional misrepresentation, there was a possibility of punitive damages.

Precisely because Southern never scheduled the claim, presumably his creditors were never aware of it. He disclosed it orally at the creditors' meeting, but none of his creditors was present. There is every reason to suppose that, if they had known about the claim, they would have wanted the trustee to pursue it. They would not have had to advance any litigation costs, yet they would have enjoyed any net recovery. Thus, unlike in *Morlan*, it is clear, beyond a triable issue of fact, that full compliance with the Bankruptcy Code's requirements regarding scheduling and abandonment of claims would not have been a purely formal exercise.

Next, Southern argues that, under *Morlan*, *Rush* lacks standing to assert that *he* lacks standing. Again, however, in *Morlan*, it was crucial that the trustee had stated that he *did* intend to abandon Morlan's claim. The court reasoned that this would have sufficed for abandonment under common law; all that was lacking was compliance with the *heightened* requirements for abandonment imposed by the Bankruptcy Code, which, the court held, were intended for the protection of creditors and could not be invoked by noncreditors. Indeed, the Seventh Circuit later characterized *Morlan* as holding that "claims *formally abandoned* by a trustee revert to the debtor even if not scheduled . . . ." (*Pease v. Prod. Workers Union of Chi. & Vicinity Local 707* (7th Cir. 2004) 386 F.3d

10

819, 821, italics added.)  Here, by contrast, the trustee never manifested any intent to abandon Southern's claims against Rush, formally or informally.

Cases other than *Morlan* make it clear that a noncreditor can assert the failure to schedule a claim as a defense to that claim.  In *First Nat'l Bank v. Lasater* (1905) 196 U.S. 115, the United States Supreme Court held that an erstwhile debtor lacks standing to prosecute an unscheduled (and thus unabandoned) cause of action after the close of his bankruptcy.  (*Id*. at pp. 118-119.)  It did so even though the issue was raised by the defendant in the action, rather than by any of the debtor's creditors.  (See *ibid*.)  Since the rule of *Lasater* was made part of the Bankruptcy Code, defendants have routinely been allowed to raise the debtor's lack of standing as a defense.  (E.g., *Vreugdenhill v. Navistar Int'l Transp. Corp.*, *supra*, 950 F.2d at pp. 525-526.)  A California court has likewise allowed a defendant to assert a former bankruptcy debtor's lack of standing as a defense.  (*M & M Foods, Inc. v. Pacific American Fish Co., Inc.*, *supra*, 196 Cal.App.4th at pp. 558, 564.)  Ultimately, this benefits the creditors, because the bankruptcy can be reopened to allow the trustee to litigate the claim on their behalf.  (11 U.S.C. § 350(b); see, e.g., *Kane v. Nat'l Union Fire Ins. Co.* (5th Cir. 2008) 535 F.3d 380, 386-388.)

In *Stein v. United Artists Corp.* (9th Cir. 1982) 691 F.2d 885, the Ninth Circuit specifically rejected a contention identical to the one that Southern is raising here.  It explained:  "The right to sue goes to the essential merits of the claim, as the identity of the injured party relates directly to the measure of damages and under general standing principles only the injured party ensures the adversary interest necessary to prosecute the

11

suit. The defendants in the district court were entitled to contend that [the plaintiff] lacked title to the claim he was asserting." (*Id.* at p. 893.)

In our view, Rush has standing to assert Southern's lack of standing. "Every action must be prosecuted in the name of the real party in interest . . . ." (Code Civ. Proc., § 367.) If Southern wins a judgment against Rush, Rush would be exposed to the risk that Southern's creditors might reopen the bankruptcy and win a double recovery against it. (*Simpson v. Miller* (1907) 7 Cal.App. 248, 254.) Accordingly, Rush has a very real and pecuniary interest in being sued by the right party.

*Morlan* pooh-poohed the likelihood of this scenario. The court felt comfortable that the creditors would not reopen the bankruptcy (although it declined to hold that they could not). It was more concerned about the apparent windfall to the defendants. It is true that, if Southern cannot litigate this action (and if the bankruptcy is not reopened), Rush will enjoy a windfall. However, from the moment Southern filed for bankruptcy, he could no longer count on being able to litigate his claim against Rush, and he could no longer count on enjoying the fruits of the claim. The key effect of his failure to schedule the claim is that it did not *revert* to him when the bankruptcy was closed. However, he had no legitimate expectation that, if he *did* disclose it, it *would* revert to him. It was entirely possible that the trustee would prosecute it or, at a minimum, settle it. Indeed, the more potentially lucrative it was, the more likely it was that it would never revert. If Southern is allowed to sue Rush anyway, *he* will enjoy a windfall. And he created the

12

problem by failing to disclose the claim when he had a duty to do so.  In this respect, Rush is an innocent party.  Thus, any windfall should go to Rush.

Southern complains that, in this case, the rule that unscheduled property remains property of the estate is inequitable — indeed, "patently unjust."

We acknowledge that "bankruptcy courts . . . are courts of equity and 'appl[y] the principles and rules of equity jurisprudence.' [Citations.]" (*Young v. United States* (2002) 535 U.S. 43, 50.)  However, "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." (*Norwest Bank Worthington v. Ahlers* (1988) 485 U.S. 197, 206.)  The rule that unscheduled property remains property of the estate has been codified in 11 United States Code section 554(d), and we are required to follow this federal statutory provision.

We hasten to add that we are not particularly persuaded that the rule operates inequitably in this case.  Southern points out that he *did* disclose the claim, albeit in oral testimony at the creditors' meeting, rather than in writing in his schedules, as required. He also argues that his failure to amend his schedules was the fault of his bankruptcy counsel; he characterizes himself as "an innocent debtor."  As we have already discussed, however, once he filed his bankruptcy, the claim was no longer his to litigate.  As between him and Rush, the equities favor Rush.  Thus, it is not inequitable to hold that Southern no longer has standing to litigate the claim.

Finally, Southern argues that the trial court erred by failing to give him leave to amend to substitute the trustee as plaintiff. However, he never requested leave to amend below.

"[T]he pleadings set the boundaries of the issues to be resolved at summary judgment. [Citations.] . . . Thus, a plaintiff wishing 'to rely upon unpleaded theories to defeat summary judgment' must move to amend the complaint before the hearing. [Citations.]" (*Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 648, fn. omitted.) Here, Southern did not do so. Hence, we need not consider this issue.

### III

### DISPOSITION

The judgment is affirmed. Rush is awarded costs on appeal against Southern.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI_____
                                                                                    J.

We concur:


HOLLENHORST_____
            Acting P. J.


KING_____
                        J.

14