Filed 6/30/15  Llanos v. Bank of America CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| BEATRIZ LLANOS,<br><br>    Cross-complainant and Appellant,<br><br>    v.<br><br>BANK OF AMERICA CORPORATION et al.,<br><br>    Cross-defendants and Respondents. | B248355<br><br>(Los Angeles County<br>Super. Ct. No. LC094568) |
| FIA CARD SERVICES,<br><br>    Plaintiff, Cross-defendant and Respondent,<br><br>    v.<br><br>BEATRIZ LLANOS,<br><br>    Defendant, Cross-complainant and Appellant. | B253264<br><br>(Los Angeles County<br>Super. Ct. No. LC094568) |

APPEAL from judgments of the Superior Court of Los Angeles County, Huey E. Cotton, Jr., Judge.  Affirmed.

Pacific Atlantic Law Corporation and Chinye Uwechue for Defendant, Cross-complainant and Appellant.

Reed Smith, Margaret M. Grignon, Abraham J. Colman, Zareh A. Jaltorossian and Raagini Shah for Cross-defendants and Respondents Bank of America Corporation and Bank of America.

Reed Smith, Margaret M. Grignon, Abraham J. Colman, Zareh A. Jaltorossian and Ilana R. Herscovitz for Plaintiff, Cross-defendant and Respondent FIA Card Services.

_____

FIA Card Services, N.A. (FIA) filed a complaint on August 16, 2011 against Beatriz Llanos in Los Angeles Superior Court, alleging that Llanos defaulted on her credit card debt of $26,062.67.[1] Llanos answered on September 21, 2011, and also filed a cross-complaint alleging that FIA breached its contract with Llanos by failing to give her notice of fees and charges, or the right to opt out; breached fiduciary duties to Llanos; committed negligent and intentional misrepresentation in promotional materials; violated the Business and Professions Code, sections 17500 et seq. and 17200 et seq.; and breached the implied covenant of good faith and fair dealing. In January 2012, Llanos added Bank of America Corporation (BAC) and Bank of America, National Association (BANA) as cross-defendants.

Llanos filed a bankruptcy petition on June 7, 2012, notifying the trial court and the parties on June 8, 2012. The petition listed Llanos's FIA credit card debt (and separate

---

[1] A separate limited jurisdiction action filed by FIA against Llanos also resulted in a cross-complaint by Llanos and was deemed related by the trial court. We granted judicial notice of a second amended cross-complaint in the limited appeal. We do not have jurisdiction over an appeal in a limited civil case, and we therefore do not discuss the limited action, which in any event is not relevant to our reasoning. (*Anchor Marine Repair Co. v. Magnan* (2001) 93 Cal.App.4th 525, 528; Code Civ. Proc., § 904.1, subd. (a).) Llanos has requested judicial notice of what she deems a tentative ruling in the limited jurisdiction case. We deny the request and deny her motion to submit the same document as new evidence. Llanos also requests judicial notice of an objection she filed in the case on appeal, and of the documents in her appellant's appendix. We also deny these requests, as all those documents appear in the clerk's transcript filed by Llanos.

credit card debt to each of BAC and BANA) on the schedule identifying creditors holding unsecured claims, but did not list the cross-complaint's causes of action against FIA, BAC, or BANA on the schedule identifying her personal property, which required that she list "contingent and unliquidated claims of every nature, including . . . counterclaims of the debtor" and the estimated value of each. The trial court stayed the action, taking off calendar (as to the cross-complaint) a pending motion for judgment on the pleadings by FIA and a pending demurrer by BAC and BANA. The bankruptcy court granted Llanos a discharge on September 17, 2012, eliminating her obligation to pay the debts existing on the date she filed for bankruptcy.

On December 5, 2012, the trial court held a hearing regarding the status of Llanos's bankruptcy. The court lifted the stay and dismissed FIA's complaint, leaving in place Llanos's cross-complaint. On January 15, 2013, FIA filed a motion for judgment on the pleadings, and BAC and BANA filed a demurrer. All three defendants argued that because Llanos did not list her causes of action in her bankruptcy schedules, she did not have standing to pursue them. BANA and BAC also demurred separately to each cause of action as legally insufficient, and FIA argued that each cause of action failed to state a claim.

On January 18, 2013, FIA moved to compel Llanos's responses to discovery that FIA had propounded in June 2012, before Llanos filed her bankruptcy petition, stating that Llanos had failed to respond to two meet and confer letters, and requesting sanctions of $3,141.36. In the meet and confer requests, FIA had written that as a result of the bankruptcy stay, it understood its last day to file a motion to compel was January 18, and Llanos's counsel should contact FIA if Llanos disagreed. Llanos did not respond. In her opposition to FIA's motion to compel, however, she argued the motion to compel was untimely.

After a hearing on March 1, 2013, the court sustained BAC and BANA's demurrer without leave to amend, agreeing that Llanos could not pursue her causes of action as they arose before she filed bankruptcy and thus belonged to the bankruptcy estate. The trial court also concluded that each cause of action failed to state a viable claim. Notice

3

of entry of judgment in favor of BAC and BANA was filed March 11, 2013.  Llanos filed a notice of appeal on April 19, 2013.

On March 6, 2013, the trial court granted FIA's motion for judgment on the pleadings with prejudice as to the claims alleging breach of contract, breach of fiduciary duty, breach of the covenant of good faith and fair dealing, and declaratory relief,  noting that Llanos "conceded in oral argument that no contract exist[s] between [Llanos] and [FIA] Card Services," (boldface omitted) and a credit card agreement gave rise to no fiduciary duty.  The court granted leave to amend as to the claims for negligent and intentional misrepresentation and statutory violations.  Although Llanos could not pursue these claims as they were the property of the bankruptcy estate, the court allowed 30 days for amendment, to give the trustee the opportunity to substitute into the case or abandon the claims.  No amended cross-complaint was filed within the 30-day period.

FIA's motion to compel came on for hearing on March 27, 2013.  Llanos and her counsel did not appear.  After waiting for 35 minutes, the court adopted its tentative ruling granting the motion to compel and imposing sanctions of $1,000, finding it "reasonable that the plaintiff calculated the 45-day period from the date defendant's counsel informed the Court and plaintiff's counsel that the bankruptcy stay was lifted."

On April 16, 2013, FIA moved for entry of judgment pursuant to Code of Civil Procedure section 438, subdivision (h)(4)(C), as Llanos had failed to timely amend the cross-complaint.  Llanos's counsel filed a motion for relief from excusable mistake stating she had believed the case was under appeal.  An attached first amended cross-complaint alleged, for the first time, that "Llanos has never entered into any credit card contract with FIA" but had instead acquired credit cards from BANA and BAC, who used FIA as a front to attempt to extort money from Llanos by having FIA file the lawsuit against Llanos (and all three had misrepresented in court that "FIA was the same entity as BOA"), when "[t]he reality is that FIA is a separate legal entity within the [Bank of America] group."

4

FIA opposed Llanos's counsel's motion for relief from excusable mistake. The court granted the motion, and ordered Llanos's counsel to pay sanctions of $2,500 in addition to the $1,000 previously imposed regarding the motion to compel.

FIA then demurred to the first amended cross-complaint on the same grounds as in the first demurrer, including lack of standing. Llanos opposed the demurrer, arguing that the bankruptcy trustee had authorized Llanos to pursue the cross-complaint in an email exchange, a copy of which she had lodged with the court.

After hearing, the trial court sustained the demurrer without leave to amend, stating that in the absence of a formal abandonment of her claim, Llanos's claims belonged to the bankruptcy trustee. The court also concluded that the remaining causes of action failed because they were not pleaded specifically and were not supported by facts describing statutory violations. The notice of entry of judgment was filed on October 16, 2013, and Llanos appealed on December 10, 2013, electing to proceed without a reporter's transcript. We consolidated the two appeals.

## DISCUSSION

Llanos's initial cross-complaint alleged that she had a contract with FIA which FIA violated. Her amended cross-complaint alleged that she did not have a contract with FIA but instead had acquired credit cards from BANA and BAC who then used FIA as a "front" to sue her. Llanos did not provide account numbers, and did not describe or attach any information or documentation to either cross-complaint regarding any accounts, agreements, or promotional materials. The trial court dismissed the cross-complaint as to BAC, BANA, and FIA after sustaining demurrers. Llanos's briefs on appeal argue that her credit cards were issued in the 1980's, and were with BANA and BAC and not with FIA, which she claims did not exist at the time, and that she had no contract with FIA. Her appellate briefs repeat her cross-complaint's bare and nonspecific allegations and do not contain legal analysis explaining why the demurrers should not have been granted or why the court abused its discretion in not allowing her to amend, and the record on appeal does not include any transcripts of the hearings after which the demurrers were sustained. Most importantly, however, once Llanos had obtained a

5

discharge in bankruptcy, her debts to FIA, BAC, and BANA were discharged and the lawsuit was no longer hers to pursue.

"'As a general matter, upon the filing of a petition for bankruptcy, "all legal or equitable interests of the debtor in property" become the property of the bankruptcy estate and will be distributed to the debtor's creditors. [11 U.S.C. section] 541(a)(1).' [Citation.]" (*M & M Foods, Inc. v. Pacific American Fish Co., Inc.* (2011) 196 Cal.App.4th 554, 561 (*M & M Foods*).) The property of the estate includes causes of action. (*Id.* at p. 562.) "'In the context of bankruptcy proceedings, it is well understood that "a trustee, as the representative of the bankruptcy estate, is the real party in interest, and is the only party with standing to prosecute causes of action belonging to the estate once the bankruptcy petition has been filed." [Citation.] The commencement of Chapter 7 bankruptcy extinguishes a debtor's legal rights and interests in any pending litigation, and transfers those rights to the trustee, acting on behalf of the bankruptcy estate. *See* 11 U.S.C. § 541(a)(1) (indicating that a bankruptcy estate includes "all legal or equitable interests of the debtor in property"); *id.* § 323 (establishing the bankruptcy trustee as the "representative" of the estate with the "capacity to sue and to be sued" on its behalf). Thus, "[g]enerally speaking, *a pre-petition cause of action is the property of the Chapter 7 bankruptcy estate*, and only the trustee in bankruptcy has standing to pursue it." [Citations.]' [Citation.]" (*Ibid.*) Llanos's litigation was pending when she filed her chapter 7 bankruptcy petition. The causes of action in the cross-complaint thus were the property of the bankruptcy estate, and only the trustee in bankruptcy had standing to pursue the claims.

It is also true, however, that "'[a]n outstanding legal claim that is abandoned by the trustee reverts back to the original debtor-plaintiff.'" (*M & M Foods*, *supra*, 196 Cal.App.4th at p. 563.) "'Whatever interest passed to the trustee when [the debtor] filed for Chapter 7 bankruptcy [is] extinguished when [the trustee] abandon[s] the cause of action . . . . [Citation]. In other words, "when property of the bankrupt is abandoned, the title reverts to the bankrupt *nunc pro tunc*, so that he is treated as having owned it continuously." [Citation].' [Citation.]" (*Ibid.*) Nevertheless, "'"Abandonment requires

6

affirmative action or some other evidence of intent by the trustee." [Citation]. During the pendency of the case, the notice and hearing requirements of [the federal bankruptcy statute] must be observed for an "abandonment" to occur. [Citation].'" (*Bostanian v. Liberty Savings Bank* (1997) 52 Cal.App.4th 1075, 1086–1087.) Formal notice and a hearing are required. (11 U.S.C. § 554(a).) Llanos asserts that the bankruptcy trustee abandoned the claims in the cross-complaint in an email dated February 20, 2013 when, in response to her counsel's email suggesting that counsel represent Llanos and the bankruptcy estate take the money if Llanos prevailed, the trustee stated, "That is how you should proceed." This is far from the formal procedure required for abandonment.

In addition, it is undisputed that the bankruptcy petition did not list as an asset the claims Llanos asserted in the cross-complaint. As the claims in the cross-complaint were not listed as an asset, any purported abandonment by the trustee would not return the claims to Llanos. "[P]roperty not formally scheduled in the bankruptcy proceeding is *not abandoned* at the close of the bankruptcy proceeding, even if the trustee was aware of the existence of the property. [Citation.] [¶] . . . In a bankruptcy proceeding, the 'bankruptcy code place[s] an affirmative duty on [the debtor] to schedule his assets and liabilities. [11 U.S.C.] § 521(1). If he fail[s] properly to schedule an asset, including a cause of action, that asset continues to belong to the bankruptcy estate and [does] not revert to [the debtor].'" (*M & M Foods*, *supra*, 196 Cal.App.4th at p. 563.)

Absent proper listing of the claims in the bankruptcy schedules and timely subsequent formal abandonment by the trustee, neither of which occurred in this case, Llanos did not have standing to pursue the claims in the cross-complaint. When a defendant raises on a demurrer that the plaintiff does not possess the substantive right or standing to prosecute the action, the complaint "'is vulnerable to a general demurrer on the ground that it fails to state a cause of action.'" (*Schauer v. Mandarin Gems of Cal., Inc.* (2005) 125 Cal.App.4th 949, 955; *Tarr v. Merco Constr. Engineers, Inc.* (1978) 84 Cal.App.3d 707, 713.) Llanos's lack of standing was sufficient grounds for the court to sustain the demurrers to the cross-complaint without leave to amend. (*Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 538.)

Llanos also appeals the trial court's awards of discovery sanctions to FIA. We review the rulings on discovery sanctions for an abuse of discretion, and "'[a] court's decision to impose a particular sanction is "subject to reversal only for manifest abuse exceeding the bounds of reason."'" (*Doe v. United States Swimming, Inc.* (2011) 200 Cal.App.4th 1424, 1435.)

Regarding the $1,000 sanction related to FIA's motion to compel, Llanos's only argument on appeal is that the motion was untimely and the trial court therefore had no jurisdiction. The trial court rejected this argument, and we agree. FIA propounded special interrogatories, form interrogatories, and requests for admission. Llanos did not respond to the special interrogatories. There is no time limit for filing motions to compel initial responses. (Code Civ. Proc., § 2030.290, subd. (b).) Llanos filed boilerplate objections to the form interrogatories and requests for admissions on June 12, 2012, after the bankruptcy stay was in effect. FIA had 45 days to file a motion to compel additional responses. (Code Civ. Proc., § 2030.300, subd. (c).) The trial court was correct to calculate the 45-day period beginning December 5, 2012, when Llanos informed the court and counsel that the bankruptcy stay was lifted, and FIA's motion to compel filed on January 18, 2013 therefore was timely.

As to the $2,500 sanction the court imposed on Llanos when it granted Llanos's motion for relief from excusable mistake (and allowed her to file her amended cross-complaint), Code of Civil Procedure section 473, subdivision (b) provides: "The court shall, whenever relief is granted based on an attorney's affidavit of fault, direct the attorney to pay reasonable compensatory legal fees and costs to opposing counsel or parties." The imposition of fees and costs on the attorney whose mistake is excused is mandatory, and Llanos does not make any argument that the amount was excessive or an abuse of discretion.

8

## DISPOSITION

The judgments are affirmed.  Costs are awarded to Bank of America Corporation, Bank of America, N.A., and FIA Card Services, N.A.

NOT TO BE PUBLISHED.


JOHNSON, J.


We concur:


CHANEY, Acting P. J.


BENDIX, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.