Filed 1/5/16  Padilla v. Wells Fargo CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CARLOS E. PADILLA, | D067521 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2014-00016399-CU-OR-CTL) |
| WELLS FARGO, N.A. et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, John S. Meyer, Judge.  Affirmed in part and reversed in part; remanded with directions.

Law Office of Ronald H. Freshman and Ronald H. Freshman for Plaintiff and Appellant.

Severson & Werson, Kerry W. Franich, Andrew L. Minegar and Jan T. Chilton, for Defendants and Respondents.

Carlos Padilla brought an action against several financial institutions after his home was sold in a nonjudicial foreclosure sale.  The court sustained defendants' demurrer without leave to amend, finding Padilla had no standing to bring the claims

because the claims were assets of his bankruptcy estate. The court dismissed the matter without prejudice because Padilla could potentially obtain relief from the bankruptcy court. On appeal, Padilla challenges the court's dismissal ruling. We determine this challenge is without merit.

Padilla also contends the court erred in ordering him to make monthly payments to defendant Wells Fargo Bank, N.A. (Wells Fargo) as a condition of granting Padilla's motion to consolidate the case with a related unlawful detainer action. We conclude the court had no authority to order the payments to be made directly to a party before liability was determined. Accordingly, we reverse and remand for the limited purpose of vacating this order and ordering Wells Fargo to reimburse Padilla for the payments made under the court's prior ruling. In all other respects, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In 2005, Padilla obtained a $540,000 secured loan from Wells Fargo to purchase a home in Chula Vista (the Property). The deed of trust named Wells Fargo as beneficiary and Fidelity National Title Insurance Company as trustee. At some point, Padilla stopped paying the monthly mortgage payments.

In December 2012, Wells Fargo's agent, NDEx West, LLC (NDEx), recorded a notice of default on Padilla's loan. The next month, Wells Fargo recorded a notice of assignment of Padilla's deed of trust to an entity identified as "U.S. Bank National Association, as trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2006-AR2" (collectively referred to as U.S. Bank; the latter entity referred to as Asset Corporation). (Capitalization omitted.) Wells Fargo, as the

2

servicing agent for U.S. Bank, then recorded a substitution of trustee document, stating NDEx is the new trustee on Padilla's deed of trust.

In March 2013, NDEx recorded a notice of trustee's sale, scheduling a nonjudicial foreclosure sale of the Property for April 15, 2013. Three days before the sale was to take place, Padilla (represented by counsel) filed a Chapter 7 bankruptcy petition. In the bankruptcy petition, Padilla identified Wells Fargo as a creditor with an undisputed secured interest in the Property. He also filed a form stating he was claiming the Property as exempt, and he intended to "Surrender[ ]" the Property.

Based on the bankruptcy filing, the foreclosure sale was postponed.

In July 2013, the bankruptcy court granted Padilla a discharge, which eliminated Padilla's legal obligation to pay certain of his debts. Three months later, in September 2013, Padilla's bankruptcy case was closed.

Four months later, in January 2014, the substituted trustee on Padilla's deed of trust (NDEx) conducted a foreclosure sale of the Property. At the sale, U.S. Bank purchased the Property through a credit bid of the amount owing on the loan ($435,000). About three months later, in April 2014, Wells Fargo (as "Attorney in Fact" for U.S. Bank) brought an unlawful detainer action against Padilla, seeking unpaid rent and to remove him from the Property now owned by U.S. Bank.

Less than one month later, Padilla brought an action against Wells Fargo, NDEx, U.S. Bank, and Asset Corporation (collectively defendants), alleging defendants committed fraud at the inception of the loan, violated statutory and common law duties by misrepresenting information regarding the loan and the identity of the note holder, and

3

engaged in misleading and improper transfers and assignments of the loan and deed of trust.

Padilla immediately moved to consolidate this civil action with the unlawful detainer action and to stay the unlawful detainer proceedings. Wells Fargo opposed the consolidation and stay, arguing the request was "a delaying tactic." Wells Fargo asserted that Padilla had never tendered the amount to pay off the loan and was not paying for his continued use and possession of the Property. Wells Fargo alternatively argued that if the court granted the consolidation motion, the court should require Padilla to obtain a bond because a consolidation would preclude Wells Fargo from exercising its statutory rights to the speedy unlawful detainer remedy.

After a hearing, the court agreed to consolidate the matters, but scheduled an additional hearing on Wells Fargo's bond request.

In its supplemental briefing, Wells Fargo argued that under the preliminary injunction statute (Code Civ. Proc., § 529), the court should require Padilla to pay Wells Fargo a monthly amount equivalent to the property's fair market rental value or to post a bond for that amount pending the resolution of the civil action. Wells Fargo submitted evidence showing the Property's monthly rental value was $2,900.

Padilla countered that the court had no authority to order monthly rental payments or a bond because a consolidation order is not comparable to an injunction. Padilla also argued that even if the court had this authority, Wells Fargo had not yet established its entitlement to possession or payment. Padilla maintained that at most he should pay the prior mortgage payment ($1,250) rather than a rental payment, and the payments should

4

be placed into the court's trust account "for forwarding to the legal, valid creditor entitled to his payments at the conclusion of the litigation."

After a hearing, the court granted Wells Fargo's request that it condition the consolidation order on Padilla paying a fair rental value for his continued use of the Property and ordered these payments to be made directly to Wells Fargo's attorney. The court stated: "[Padilla] has failed to make any mortgage payment for several years. Wells Fargo has paid the property taxes and insurance premiums. [Padilla] has admittedly attempted to avoid foreclosure by filing for bankruptcy. [Padilla] filed this wrongful foreclosure action in what appears to be an attempt to delay the unlawful detainer action. [¶] . . . [¶] . . . [T]he Court conditions its order of consolidation on . . . Padilla making monthly rent payments in the amount of $2,900 per month. . . . Payments shall be made to counsel for Wells Fargo. If any payment is not [timely] paid . . . , counsel for Wells Fargo may appear ex parte to seek reconsideration of the consolidation order."

Padilla then filed a lengthy amended complaint, asserting nine statutory and common law causes of action.[1] Padilla identified numerous alleged wrongful acts, including: (1) Wells Fargo discriminated against him in the loan and foreclosure transactions because he "is a Hispanic man of Mexican . . . origin"; (2) the loan was an illegal " 'table funded' " transaction; (3) defendants improperly assigned and transferred

---

[1] The causes of action were: cancellation of instruments; negligence; slander of title; violation of Business and Professions Code section 17200; accounting; violation of the California Homeowners Bill of Rights; fraud; wrongful foreclosure; and violation of Civil Code section 51.

5

interests in the Property and none of the defendants had valid rights in the note, deed of trust, or the Property; and (4) defendants misrepresented and/or omitted material facts in the various statutory notices and other documents.  Padilla alleged he had filed his Chapter 7 bankruptcy petition "in an attempt to find resolution for the loan."  Padilla attached to the complaint the various recorded title documents, including the grant deed, promissory note, deed of trust, notice of default, substitution of trustee, notice of trustee's sale, and trustee's deed upon sale.

Defendants demurred to the complaint on various grounds including:  (1) Padilla's claims were barred by his bankruptcy petition; (2) Padilla's causes of action claiming defendants lacked authority to issue the statutory notices and/or conduct the foreclosure sale are unsupported by California law; and (3) Padilla failed to allege he is willing and able to tender the amount owed on the loan.  Defendants requested the court take judicial notice of various recorded title and loan documents (most of which were attached to Padilla's complaint), and of the bankruptcy filing and orders.

In opposition, Padilla argued his causes of action were valid under California law and his bankruptcy filing did not bar the current action.  Padilla also objected to the court taking judicial notice of the recorded documents, but did not object to the court considering the bankruptcy documents.

In its tentative ruling, the court found Padilla's claims were barred because the claims "appear to be assets of the bankruptcy estate" and Padilla "does not deny this." The court stated:  "[t]he appropriate action would be for plaintiff to re-open his bankruptcy case and get a determination from the bankruptcy court [that the claims have

6

been abandoned]." The court also found that "based on a review of the confusing, convoluted and overly-pled First Amended Complaint, it is not clear that" Padilla's allegations support a valid claim under California law. The court concluded: "[P]laintiff is directed to seek leave of the Bankruptcy Court before proceeding further with the claims asserted in the First Amended Complaint. This matter is stayed until leave is granted by the Bankruptcy Court and/or until further order of this Court." The court additionally granted defendants' judicial notice request.

The court then held a hearing. A transcript of this hearing was not included in the appellate record. After the hearing, the court issued a signed minute order stating it was "vacat[ing]" its tentative ruling and dismissing the case without prejudice. The order stated the court grants defendants' "request to dismiss the civil matter" and "orders the civil case dismissed without prejudice." The court also ordered "the Unlawful Detainer case [to] be deconsolidated."

Defendants later voluntarily dismissed the unlawful detainer action for reasons that are not apparent on the record.

DISCUSSION

I. *Appealability*

Defendants contend the court's minute order is not appealable because the court never entered a "final judgment" and because the court dismissed the action "without prejudice." The argument is without merit. Because the minute order was signed by the court, it constitutes a final appealable judgment. (Code Civ. Proc., § 581d; *Cano v. Glover* (2006) 143 Cal.App.4th 326, 328, fn. 1.) Additionally, although the dismissal

7

was without prejudice, this judgment is appealable because the dismissal was involuntary; it disposed of all claims; and it was entered by the court without any agreement by the parties as to future litigation or a waiver of the limitations period. (See *Davis v. Southern California Edison Co.* (2015) 236 Cal.App.4th 619, 622, fn. 3; *Topa Ins. Co. v. Fireman's Fund Ins. Companies* (1995) 39 Cal.App.4th 1331, 1336.)

## II. *Demurrer Review Standards*

In reviewing a judgment after a demurrer is sustained without leave to amend, we examine whether the complaint alleged facts sufficient to state a cause of action under any legal theory. (*Koszdin v. State Comp. Ins. Fund* (2010) 186 Cal.App.4th 480, 487.) We assume the truth of the alleged facts and all facts that may be reasonably inferred from the allegations, but do not assume the truth of contentions, deductions, or legal and factual conclusions. (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6.) We also consider documents properly subject to judicial notice. (See *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) We apply a de novo review standard, and are not bound by the court's stated reasons. (*Walgreen Co. v. City and County of San Francisco* (2010) 185 Cal.App.4th 424, 433.)

## III. *Padilla Lacks Standing to Assert Claims Owned by the Bankruptcy Estate*

The court dismissed the action without prejudice based on its finding that Padilla had no standing to assert the claims unless and until he reopened the bankruptcy proceeding and obtained an abandonment of the claims from the bankruptcy trustee. Padilla challenges this ruling. The challenge is without merit.

A.  *Generally Applicable Law*

Upon filing a bankruptcy petition, the debtor's legal and equitable interests in his or her property become the property of the bankruptcy estate.  (*M & M Foods, Inc. v. Pacific American Fish Co., Inc.* (2011) 196 Cal.App.4th 554, 562 (*M & M Foods*); see *State Farm Life Ins. Co. v. Swift (In re Swift)* (5th Cir. 1997) 129 F.3d 792, 795 (*Swift*).) This property includes accrued causes of action.  (*M & M Foods*, at p. 562.)  A Chapter 7 bankruptcy transfers a debtor's legal rights and interests in any accrued cause of action to the bankruptcy trustee, and the debtor's rights in these claims are extinguished.  (*Ibid.*)

The Bankruptcy Code places an affirmative duty on debtors to accurately schedule their assets and liabilities.  (*Cusano v. Klein* (9th Cir. 2001) 264 F.3d 936, 945-946 (*Cusano*); *M & M Foods, supra*, 196 Cal.App.4th at p. 563.)  If a debtor fails to identify an asset, *including a cause of action*, that asset remains with the bankruptcy estate and does not revert to the debtor upon the bankruptcy discharge or closing.  (*M & M Foods, supra*, 196 Cal.App.4th at pp. 563-564; see *Cusano,* at pp. 945-946; *Dunmore v. United States* (9th Cir. 2004) 358 F.3d 1107, 1112; *Calabrese v. McHugh* (D.Conn. 2001) 170 F.Supp.2d 243, 256.)  The debtor may regain ownership of a prepetition legal claim if the bankruptcy trustee abandons the claim.  (*M & M Foods*, at p. 563.)  But " ' "[a]bandonment requires affirmative action or some other evidence of intent by the trustee.". . .  [T]he notice and hearing requirements of [the federal bankruptcy statute] must be observed for an "abandonment" to occur. . . .' "  (*Bostanian v. Liberty Savings Bank* (1997) 52 Cal.App.4th 1075, 1086-1087 (*Bostanian*).)

Accordingly, a prepetition cause of action is the property of the bankruptcy estate, and, absent abandonment or other similar disposition, only the trustee in bankruptcy has standing to pursue it. (*M & M Foods, supra*, 196 Cal.App.4th at pp. 562-564; *Bostanian, supra*, 52 Cal.App.4th at p. 1087.) If the causes of action alleged in a civil complaint arose prepetition but were not included in the plaintiff's bankruptcy schedules, they belong to the bankruptcy estate, not to the party. (*Ibid.*) A plaintiff who asserts a claim that remains with the bankruptcy estate lacks standing to bring the claim, and thus the plaintiff's complaint " 'is vulnerable to a general demurrer on the ground that it fails to state a cause of action.' " (*Schauer v. Mandarin Gems of Cal., Inc.* (2005) 125 Cal.App.4th 949, 955.)

## B. *Analysis*

Padilla acknowledges he did not identify his claims against defendants in his bankruptcy petition and that the bankruptcy trustee did not abandon any of the claims. He argues he nonetheless has standing to bring the claims because they accrued after the bankruptcy estate closed. The argument is without merit.

A cause of action belongs to the debtor at the time of the bankruptcy filing (and thus is transferred into the bankruptcy estate) if the cause of action had "accrued" at the time. (*Swift, supra*, 129 F.3d at p. 795; see *Cusano, supra*, 264 F.3d at p. 947.) To determine accrual for this purpose, the courts look to the applicable state law. (*Cusano*, at p. 947.) Under California law, "[a] cause of action accrues 'when [it] is complete with all of its elements'—those elements being wrongdoing, harm, and causation." (*Pooshs v. Philip Morris USA, Inc.* (2011) 51 Cal.4th 788, 797.) Under this rule, a cause of action

10

can accrue even if a party is ignorant of the fact that he has a cause of action or if a statute of limitations tolling rule applies. (See *Rose v. Dunk-Harbison Co.* (1935) 7 Cal.App.2d 502, 505-506; *Cusano*, at p. 947; *Swift*, at pp. 795-796; *In re Pacific Cargo Services, LLC* (B.A.P. 9th Cir., Feb. 19, 2015) 2015 WL 728048, at *5-*6.) The fact a statute of limitations has not yet commenced does not necessarily bear on whether the cause of action accrued for purposes of determining the scope of the bankruptcy estate. (See *Cusano*, at pp. 947-948.)

On our detailed review of Padilla's amended complaint, we conclude that each of his nine causes of action accrued before he filed his April 2013 bankruptcy petition and thus became part of his bankruptcy estate.

The first cause of action sought to cancel loan and foreclosure documents based, in part, on defendants' alleged violation of statutory duties regarding the 2005 promissory note. Each of those instruments was recorded *before* Padilla filed his April 2013 bankruptcy petition, and Padilla's cancellation claim was based on alleged wrongful conduct and injury occurring long before the bankruptcy filing. The second and third causes of action for negligence and slander of title were based NDEx's various notices and on the transfer and/or recording of the assignment from Wells Fargo to U.S. Bank. These transfers and filings occurred before Padilla's bankruptcy filing; thus at least a portion of the alleged injury occurred at that time. The fourth and ninth causes of action asserting consumer statutory causes of action were predicated on misconduct that allegedly occurred when Padilla obtained the loan in 2005, such as collecting improper broker fees, inflating Padilla's income, and failing to provide a Spanish translation of the

11

loan documents.  The fifth and sixth causes of action for an accounting and violation of the Homeowners Bill of Rights were also based on prepetition misconduct and injury. Wells Fargo allegedly improperly held itself out to be the loan originator, servicer and beneficiary; and defendants allegedly included improper or inaccurate information in the notice of default, including an improper unpaid balance due on the note.  The seventh and eighth causes of action for fraud and wrongful foreclosure were based on alleged misrepresentations in the December 2012 notice of default and January 2013 assignment of the deed of trust.

In arguing his claims accrued post-bankruptcy, Padilla focuses on the fact the foreclosure sale took place after his bankruptcy case closed.  But the allegations in Padilla's amended complaint and the documents attached to his complaint reflect that he incurred the *other* claimed losses *before* this date.  For example, Padilla allegedly suffered damages from defendants' origination and servicing of the loan (occurring long before the bankruptcy petition was filed) and in initiating and pursuing the foreclosure proceedings (occurring several months before the bankruptcy petition was filed).  For purposes of the bankruptcy estate issue, each of Padilla's causes of action accrued before he filed the bankruptcy petition.

Padilla contends he had standing to assert the claims alleged in his amended complaint because he was unaware of the claims until after the bankruptcy estate closed. However, an accrued cause of action becomes property of the bankruptcy estate even if the debtor was unaware of the claim when it filed for bankruptcy protection.  (See *Miller v. Pac Shore Funding* (Bankr. N.D.Md. 2002) 287 B.R. 47, 50 ["Property of the debtor

12

does not escape the bankruptcy estate merely because the debtor is unaware of its existence."].)

We also reject Padilla's argument that the bankruptcy petition did not preclude his claims because all defendants "were not creditors in the Chapter 7 bankruptcy" and/or were not listed as creditors in the petition. In determining Padilla's standing, the question is whether Padilla or the bankruptcy trustee owns the claims he is now attempting to assert. Whether each defendant was a named creditor in the bankruptcy proceeding is not material to this issue.

Under Code of Civil Procedure section 367, every action must be prosecuted in the name of the real party in interest. Padilla was not the real party in interest in this case and thus was not the proper party to pursue the claim. Accordingly, the court properly sustained defendants' demurrer.[2]

### C. *Dismissal Without Prejudice*

Padilla does not contend the court should have given him an opportunity to amend the complaint to overcome the standing defect. But he argues the court abused its discretion in refusing to adhere to its tentative decision to stay the matter. The argument is unavailing.

A court must liberally permit amendment to allow a plaintiff to correct any defects in a pleading. (*Chapman v. Skype* (2013) 220 Cal.App.4th 217, 226.) Under this rule, a

---

2    Based on our determination, we do not reach defendants' alternate argument that Padilla was estopped from asserting the claims based on his representation in his bankruptcy petition that the secured debt to Wells Fargo was undisputed.

13

trial court has the discretion to stay a matter for the plaintiff to seek to perfect his standing and to amend the complaint after doing so. (*Cloud v. Northrop Grumman Corp.* (1998) 67 Cal.App.4th 995, 1005.) But the court is not required to do so. When a plaintiff lacks standing to bring the action, the complaint is subject to a demurrer and the court may enter a judgment of dismissal *with prejudice*. (See *Reynolds v. City of Calistoga* (2014) 223 Cal.App.4th 865, 876; *The H.N. and Frances C. Berger Foundation v. Perez* (2013) 218 Cal.App.4th 37, 42-43; see also *Hudis v. Crawford* (2005) 125 Cal.App.4th 1586, 1592 [" 'lack of standing' is a jurisdictional defect"].) If the plaintiff comes forward with facts showing he or she can cure the standing problem in a timely manner, the court should generally allow the plaintiff to amend the complaint and/or provide a brief stay to allow the plaintiff to address the deficiencies. (See *Cloud*, *supra*, 67 Cal.App.4th at pp. 1004-1011.) But in this case there is no evidence in the record that Padilla communicated to the court that he intended to timely reopen the bankruptcy case to request that the trustee abandon the claim *and* that he was likely to obtain an abandonment of his claims against defendants.

Further, Padilla did not designate the reporter's transcript of the demurrer hearing, and therefore the record does not contain the facts and arguments motivating the court to modify its tentative decision. On this silent record, we are required to presume that the trial court had a reasonable basis to change its earlier tentative ruling and order a dismissal without prejudice rather than a stay. (See *Gonzalez v. Rebollo* (2014) 226 Cal.App.4th 969, 977; *Wagner v. Wagner* (2008) 162 Cal.App.4th 249, 259; *Stevens v. Stevens* (1954) 129 Cal.App.2d 19, 20.)

14

On our review of the appellate record, we have found no indication that Padilla represented to the court that he was intending to seek to reopen the bankruptcy case to obtain an abandonment of the claim or that he intended to take any other action during the stay. On this record and given the undisputed facts that Padilla was living in a home that he no longer owned and had stopped making the court-ordered monthly rental payments, and his admissions that he was a debtor who had owed outstanding amounts on the promissory note, the court did not abuse its discretion in concluding the better approach was to dismiss the action without prejudice.

Padilla contends he suffered undue prejudice from the court's decision to dismiss the case, rather than to stay the matter. In support, he identifies only two items of prejudice: (1) he would "incur his filing costs again"; and (2) he "lost $5,800" in rental payments made to Wells Fargo. These factors do not show the court abused its discretion. First, Padilla (and/or his attorney) were responsible for ensuring he had proper legal standing to bring the claims. To the extent he did not perfect this standing, the minimal cost of another filing is fair and does not constitute an undue burden. If Padilla later prevails on his claims, these filing fees may be recoverable. Moreover, Padilla's superior court filing fees are de minimis when compared with the cost of bringing an appeal to challenge the court's order dismissing the matter without prejudice. Instead of appealing the court's decision, Padilla could have immediately sought relief from the bankruptcy court. Only he (or his attorney) is to blame for this waste of resources. Additionally, with respect to the rental payments, we are reversing that order and therefore the claimed prejudice has been eliminated.

15

We also reject Padilla's argument the court erred in refusing to grant him leave to amend to add facts to clarify his claims challenging defendants' right to enforce the secured promissory note and deed of trust. Because Padilla lacked standing, the court properly dismissed the action regardless of the substantive merits of the claims.

### D. *Judicial Notice*

Padilla contends the court erred in dismissing the action because the court improperly took judicial notice of the recorded title and loan/deed of trust documents.

A court may take judicial notice of the dates, parties, and legally operative language of recorded documents. (See *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 265.) Padilla recognizes this rule, but argues a court has no authority to "take judicial notice of disputed facts stated in public records." We agree with this general proposition, but it has no applicability here. There is no showing the court improperly took judicial notice of any disputed facts, or assumed the truth of any challenged fact. Padilla attached the title/loan documents to his complaint, and cites to the documents in the factual section of his opening appellate brief to establish the basic chronology of the relevant events. We consider them for the same limited purposes. There was no error.

Further, to the extent Padilla argues the court erred in judicially noticing the bankruptcy petition, the argument is without merit. In the proceedings below, Padilla did not oppose the court taking judicial notice of the bankruptcy documents. Thus, Padilla forfeited the argument. (*Shuster v. BAC Home Loans Servicing, LP* (2012) 211 Cal.App.4th 505, 512, fn. 4.) In any event, the court did not abuse its discretion in

16

considering the petition. The court could properly take judicial notice of the fact the bankruptcy petition was filed and the related orders; and there is no indication the court assumed the truth of a disputed fact within these bankruptcy documents.

IV. *Court's Monthly Payments Order*

Padilla contends the court erred in conditioning the consolidation order on his paying Wells Fargo (as attorney in fact for U.S. Bank) a monthly rental payment of $2,900.

A trial court has broad discretion to consolidate actions involving common legal or factual questions. (Code Civ. Proc., § 1048, subd. (a)[3]; *Todd-Stenberg v. Dalkon Shield Claimants Trust* (1996) 48 Cal.App.4th 976, 978-979.) A consolidation may be particularly appropriate when an unlawful detainer proceeding and an unlimited action are simultaneously pending and both raise the same complex title issues. (*Martin-Bragg v. Moore* (2013) 219 Cal.App.4th 367, 385 (*Martin-Bragg*).) The court may stay the unlawful detainer action until the title issues are resolved in the unlimited action, or it may consolidate the actions. (*Ibid.*)

But because a stay and/or a consolidation has the potential to interfere with legislative intent and strong public policy that an unlawful detainer action be heard in a expeditious and summary manner, the Legislature has provided unlawful detainer plaintiffs with a protective remedy if a case is continued or stayed beyond the strict statutory deadlines. (§ 1170.5, subd. (c); see *Martin-Bragg, supra*, 219 Cal.App.4th at p.

---

[3] All further statutory references are to the Code of Civil Procedure.

17

393.) Under section 1170.5, a court has discretion to order the unlawful detainer defendant to pay monthly rent to the court or into an escrow account during the delay of the unlawful detainer trial. This code section states: "If [the unlawful detainer] trial is not held within the time specified in this section, the court, upon finding that there is a reasonable probability that the plaintiff will prevail in the action, shall determine the amount of damages, if any, to be suffered by the defendant by reason of the extension, and shall issue an order requiring the defendant to pay that amount *into court as the rent would have otherwise become due and payable or into an escrow designated by the court* for so long as the defendant remains in possession pending the termination of the action." (§ 1170.5, subd. (c), italics added.)

Under this code section, the court must determine the payment amount based on the unlawful detainer plaintiff's "verified statement of the contract rent" and the unlawful detainer defendant's opposing evidence. (§ 1170.5, subd. (c).) If the party fails to make the ordered payments, the sole statutory remedy is that the court shall terminate the continuance or stay, and conduct the trial "within 15 days of the date payment was due." (§ 1170.5, subd. (d); see *Garcia v. Cruz* (2013) 221 Cal.App.4th Supp. 1, 7.) "*After* trial of the action, the court shall determine the distribution of the payment made into court or the escrow designated by the court." (§ 1170.5, subd. (f), italics added.)

Although neither the parties nor the court specifically identified this statute when the court considered the monthly payment issue, the court complied with many of the statutory requirements. The court held a hearing before imposing the monthly rental payment requirement, and gave both parties an opportunity to brief the issues and submit

18

relevant evidence as to the appropriate rental amount.  Further, the court's written findings reflect that it considered whether there was a reasonable probability the Wells Fargo defendants would prevail at trial, and found in the affirmative on this issue.

But the court violated one important provision in the statute—the payment is to be made into a court account or an escrow account.  (§ 1170.5, subds. (c), (e).)  The court instead ordered the payments to be made directly to the unlawful detainer plaintiff (Wells Fargo acting as attorney in fact for U.S. Bank).  This was unauthorized by the statutory language and was beyond the court's authority.  The sole purpose of the statutory prejudgment payment procedure is to protect a property owner who is denied its legislative right to a summary remedy.  If the property owner prevails, it may be entitled to the monthly rent collected during the delay period.  But under the statutory scheme, this compensation cannot be released to the property owner until and unless it prevails in the unlawful detainer action.

Although a court may, in the interests of justice, impose conditions on granting a consolidation or a continuance motion (§ 1048, subd. (a)); Cal. Rules of Court, rule 3.1332(d)(10)), defendants cite no authority allowing a court to order payments to be made directly to one party before liability has been determined, and the applicable unlawful detainer statutes limit the court's discretion in this regard.  (§ 1170.5, subd. (c).)  Accordingly, the court's payment order must be reversed.  This conclusion does not preclude Wells Fargo (or any other proper entity) from later recovering outstanding rent owed by Padilla under proper procedures.  Based on our conclusion, we do not reach

19

Padilla's additional argument challenging the evidence supporting the court's fair market rent determination.

## DISPOSITION

Judgment is reversed solely for the limited purpose of the court issuing an order requiring defendant Wells Fargo to repay Padilla the amount he paid as fair market rent pursuant to the prior court order. Padilla is not entitled to any related claimed costs or fees on remand. In all other respects, we affirm the judgment. The parties to bear their own costs on appeal.

HALLER, J.

WE CONCUR:

BENKE, Acting P. J.

IRION, J.